TEXAS & NEW ORLEANS RAILROAD COMPANY V. RUSH J. PARSONS.

No. 1887.   Decided December 9, 1908.

**1.—Peace Officer—Private Watchman—Liability of Employer.**

A deputy appointed by the sheriff at request of and paid by a railway company to preserve order and protect property on its premises, and having no order from either except to enforce the law, but who had habitually, during two years of such employment, expelled trespassers from the premises, finding some tramps in an empty car, undertook, without arresting them, to put them off the premises, in doing which, meeting another person whom he took to be one of their party and to be attempting an attack on him, he fired, wounding unintentionally one of the men he was conducting off the premises. Held that the facts supported a recovery against the railway company for the injury on the ground that the deputy sheriff was acting, not officially, but as its servant.   (Pp. 159–161.)

**2.—Same.**

The fact that the party inflicting the injury was a deputy sheriff did not establish that he was acting officially in putting trespassers off property; nor was the fact that he rendered, for compensation paid by the owner, the services of a private watchman in keeping trespassers off property conclusive that his act was that of a servant. Its nature was a question of fact dependent on the circumstances, which were here sufficient to support a finding that the act of ejecting trespassers was not an official one but that of a private watchman.   (Pp. 161, 162.)

**3.—Master and Servant—Scope of Employment—Charge.**

When a deputy sheriff, held to be performing the services of private watch-

man for a railway company by whom he was paid and from whose premises he was putting off trespassers, unintentionally wounded one of them in shooting at a third party whom he believed about to attack him, a requested instruction relieving the company from liability if his act in shooting was unconnected with the act of ejecting the trespassers was properly refused as ignoring the liability for negligent and reckless injury to the trespasser while taking control of him for the purpose of putting him off the premises. (P. 162.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Harris County.

Parsons sued the railway company and recovered judgment. It was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelley & Wolters,* for plaintiff in error.—In order to hold a railroad company liable for the negligent act of another, on the theory of respondeat superior, the burden is on claimant to prove by a preponderance of the evidence: (1) That the company had the right and the power to direct the mode and manner of doing the work, if any, performed by such person; (2) that the particular act complained of was within the general scope of the alleged employment; and (3) that the alleged negligent act was done in furtherance of the company's business, and to accomplish an object of the alleged employment; and for failure of the evidence to sustain either of these points, the defendant is entitled to a verdict. Cunningham v. Railway Co., 51 Texas, 503; Wilkins v. Ferrell, 10 Texas Civ. App., 231; 20 Am. & Eng. Ency. of Law (2d ed.), 181; Railway Co. v. Anderson, 82 Texas, 520; Railway Co. v. Cooper, 88 Texas, 607; Railway Co. v. Yarbrough, 39 S. W., 1096; Texas & N. O. R. R. Co. v. Taylor, 31 Texas Civ. App., 617.

Under the undisputed evidence the defendant Futch, on the occasion of the alleged injury, was acting in his official capacity of deputy sheriff, and was not under the direction or control of the defendant railroad company, nor acting as an employe of said company. Same authorities.

The trial court erred in refusing to give special charge No. 6, requested by defendant railway company. Cunningham v. Railway Co., 51 Texas, 503; Wilkins v. Ferrell, 10 Texas Civ. App., 231; 20 Am. & Eng. Enc. of Law (2d ed.), 181; Railway Co. v. Anderson, 82 Texas, 520; Railway Co. v. Cooper, 88 Texas, 607; Railway Co. v. Yarbrough, 39 S. W., 1096.

*Lovejoy & Parker,* for defendant in error, cited:—Railway v. Currie, 100 Texas, 143; Lipscomb v. Railway, 95 Texas, 18, 19; Railway v. Bowlin (Texas Civ. App.), 32 S. W., 918; Railway v. Taylor, 31 Texas Civ. App., 617; Railway v. Warner, 19 Texas Civ. App., 468; Railway v. Hackett (Ark.), 24 S. W., 881; Dickson v. Waldron, 41 Am. St. Rep., 450, 451; Brill v. Eddy (Mo.), 22 S. W., 488, 489; Krulevitz v. Railroad Co., 9 N. E., 613; Wood, Master & Servant, sec. 7.

Mr. Justice Brown delivered the opinion of the court.

The Texas & New Orleans Railroad Company owned and operated in 1903 a railroad from Houston to a place called Echo in Orange County, at which latter place were located a depot, shops and yards. The yards extended about two miles in length and in width sufficient to embrace five separate tracks, all being enclosed by a fence on each side the length of the yards. Within the enclosure were all improvements and buildings which were located at Echo, including a hotel at which the railroad employes boarded. The railroad company had a large number of hands employed in the shops and otherwise about its yards. At times there were many cars standing upon the tracks inside of the yards loaded and unloaded. A large number of transient persons, tramps, etc., collected about the place and frequently built fires outside and near to the fences. On several occasions they interfered with the railroad men in their work and it was not infrequently the case that depredations were committed upon the property, cars were broken into, etc. These conditions became so bad that the yardmaster reported to his superior officer, who applied to R. M. Johnson, then sheriff of Orange County, to appoint two deputies to be located in said place, Echo, to serve in protecting the property and premises of the said railroad company from trespassers and from depredations and to enforce the law against all persons who might violate it. Johnson at first declined to make the appointment, on the ground that he could not afford to pay the deputies for their services. The railroad company agreed that it would pay the monthly salaries of each deputy so appointed, and upon this agreement Charles A. Futch and one Prejean were appointed and stationed as deputy sheriffs at said place. The only instruction that Johnson gave to the deputies was to enforce the law and there is no evidence that any officer of the railroad company gave to said deputies any instructions. It seems to have been assumed by the deputies that they were to act as watchmen over the railroad property and they so acted. One of them was on watch in the day and kept the yards under supervision, going from point to point protecting the property from trespassers, the other was on guard or watch during the night and likewise made the rounds as often as was necessary among the cars that might be standing upon the tracks to protect the property against depredations and the enclosure against trespassers. It was the duty of the said watchmen, if they saw persons trespassing upon the yard of the company, to put them out of the enclosure, which they did whenever such trespassers appeared. The two appointees of the sheriff continued their services from the times of their appointment up to December 18, 1905, something more than two years, during which time their wages or salaries were paid by the month by the railroad company.

On the 18th day of December, 1905, Parsons with a number of other persons entered a box car on the Texas & New Orleans Railroad at Beaumont and remained in it until the car reached Echo, about two o'clock the next morning. An employee of the railroad company came to the car and saw that there were persons inside, and when he opened the door and told them to get out they refused to do so,

whereupon he shut the door and moved the car down to a point near the hotel where Futch was, and, by direction of the yardmaster, telephoned to Futch to come over, there were some hobos in a car. Futch went over to the car and when the railroad employee opened the car door Futch had his pistol in his hand and ordered the men in the car to get out, which they did. He then told them that he did not intend to arrest them, and had not arrested them for riding in the car, but he intended to put them off of the company's property, and ordered them to walk down the track towards the end of the yard. He told them if they did not move along that he would shoot just to see them jump, or some such language. After they had gone about three hundred yards down the track they met another man going in the opposite direction, who asked Futch for a match and also asked him when a train would go west. Just what occurred is somewhat in doubt as the witnesses differ about the facts; but taking Futch's statement, he took the man who approached him to be one of the party that he was marching down to the end of the yard and ordered him to stop, not to come to him, but to go to his crowd. The man had nothing in his hands, made no threats, but Futch thought he was trying to get hold of him and fired at him, the ball striking Parsons in the leg, inflicting a wound that made amputation of the limb necessary.

Futch testified that he did not receive any orders from the railroad officials, and the yardmaster testified that he never gave him any orders. It was also proved that the railroad officials at one time tried to get Johnson, the sheriff, to remove Futch because the latter would not obey orders of the railroad officers.

The first question which presents itself is in what character did Chas. A. Futch act at the time the injury was inflicted on Parsons? The fact that Futch was a deputy sheriff does not prove that his acts were official, neither would the fact that he was likewise a watchman employed by the railroad company, prove that his acts were those of a servant; that question must be determined by all the circumstances and facts placed in evidence. Dickson v. Waldron, 135 Ind., 507, 41 Am. St. Rep., 441.

The lawless condition of things at Echo and the exposure of the property of the railroad company to depredations by the tramps who assembled there prompted the railroad company to apply to the sheriff of Orange County for the appointment of two deputies, the purpose of the company being to secure protection for the private property of the corporation. The sheriff had no authority to appoint or to detail deputies to act as guards and watchmen over the property of the railroad. St. Louis, I. M. & S. Ry. Co. v. Hackett, 24 S. W., 881. In that case the court said: "An officer of the law can not engage as such officer to guard the property of a private individual or corporation not in the custody of the law." We do not mean to say that an officer may not watch property to prevent threatened injury. It follows that whatever authority Futch had to guard and watch over the property of the railroad company and to expel from its premises trespassers thereon must have been derived from the company and not from the sheriff. Futch testified that he had au-

thority to expel persons who were trespassing upon the property of the company and that he had exercised that authority during his stay there, and it appears from the testimony that he had been so engaged continuously for about two years time. During the time that Futch was so engaged the railroad company had paid his monthly wages without objection. It does not appear that there was any business to be transacted by Futch at that time and place except that which pertained to the property of the railroad company, except that on a few occasions one of the deputies may have served a subpoena or some process from the court. From the continued performance of this service for the railroad company for two years, which he could not have done as deputy sheriff, and the payment for the services by the railroad company, the conclusion is natural that Futch was employed by the railroad company to serve it as a guard and watchman over its property, and that while so engaged he was acting as its agent and servant.

Notwithstanding Futch was both deputy sheriff and watchman for the railroad company it does not follow that the railroad company would be responsible for his acts done in his official character. It therefore becomes necessary to inquire in what capacity Futch was acting at the time the shot was fired. When Futch was called to remove the men from the car he might lawfully have arrested them for violation of the statute against unlawfully riding in such cars. (Laws 1895, Chap. 113, p. 178.) Futch testified that when he ordered the men to get out of the car he told them that he did not intend to arrest them and did not arrest them for any violation of the law, but that he intended to put them off the company's property, which he could not have done as deputy sheriff, but was authorized to do for the corporation. It therefore appears that at that time he was acting as the agent and servant of the railroad company. (Brill v. Eddy, 115 Mo., 605.) In the case last cited a policeman who was authorized to make arrests for violations of ordinances of the city took hold of a boy who was riding a train in violation of such ordinances and pulled him from the car. The policeman had the authority to arrest the boy for the offense, but he did not intend to arrest him, only intended to take him off the car and put him out of the yard. The policeman was also an employe of the railroad company and charged with the duty of keeping boys off the yard and away from the company's property. It was contended that, he being a policeman, the railroad company was not responsible for his act, and the court said, in substance, that if it appeared from the evidence that he was acting officially and was arresting the boy, then the company would not be responsible, but if it appeared from the policeman's evidence and also from other circumstances that he did not intend to make any arrest, but simply to remove the boy from the car and from the railroad company's premises, the court held that his act was not official, but that of a servant of the company. We think the evidence in this case shows that at the time Futch marched the men, including the plaintiff, down the railroad track to put them off the company's property, he was acting in the capacity of watch-

man and agent of the company, and if he fired the shot which caused the injury while in the performance of· or in furtherance of that duty then the railroad company must be held liable for the consequences.

- It is contended that Futch departed from the service of the railroad company and became involved in a difficulty with a third person, and that he did not fire the shot in the discharge of any duty to the railroad company. The following charge was asked by the railroad company and was refused: "Gentlemen of the jury: You are instructed that if you find from the evidence that, on the occasion of plaintiff's injury, the defendant Charles A. Futch had required the plaintiff and his associates to leave the premises and yard of the defendant railway company, and while they were in the act of departing therefrom, another person, unknown to plaintiff and his associates, approached the defendant Futch, and that a personal controversy thereupon ensued between such person and the said defendant Futch, and that as result of such controversy the defendant Futch discharged his pistol, and thereby inflicted injury upon the plaintiff, but that such injury of the plaintiff was not intentional, nor for the purpose of coercing him or his said companions to leave the said yard and premises of defendant railroad company, then, and in such event, the plaintiff is not entitled to recover, and if you so believe, you will return your verdict in favor of the defendant railroad company." If the charge had been given the jury must have found for the railroad company although they believed Futch was negligent or reckless in firing his pistol. Futch had plaintiff under his control and he owed it to him and his associates not to injure them through negligent or reckless use of his gun. Under the requested charge the jury must have found for defendant railroad company although they believed Futch acted recklessly in firing his pistol and the evidence would justify that conclusion. The charge was properly refused.

The facts stated by Futch show that at the time he fired the shot he did it for the purpose of compelling the man at whom he fired to return to the parties that he had under control and whom he was putting off the yards. Futch believed that the unknown man was one of the party that he had started to put off the yard, and so believing he had ordered him to rejoin the company in order that all might be put off the grounds, and upon his refusal to do so he fired at him. Futch's evidence does not show that he had at any time abandoned the purpose he had when he started with the men from the car to take them down the track to the end of it and across the bridge. To do this he sought to keep them together. The fact that he was mistaken as to the· unknown man's relation to the others does not affect his relation to the railroad company.

We are of opinion that the evidence is sufficient to sustain the judgment of the court whereby the railroad company was held liable to Parsons for the injuries inflicted upon him by Futch. We therefore affirm the judgments of the District Court and Court of Civil Appeals.

*Affirmed.*