## TEXAS MIDLAND RAILROAD COMPANY v. F. A. GERALDON.

### Decided February 18, 1909.

**1.—Carriers of Passengers—Ejection from Depot.**

Plaintiff, with his wife and children, arriving at a depot in a small village too late for an afternoon train on which they intended to take passage, remained for some time without ejection by the agent in the depot waiting room and desired to occupy same till the departure of the next train on the following morning. The agent refused them permission to do so and on their refusal to leave, because it was raining and endangered the health of the plaintiff's wife, called an officer to compel them to leave. Held that the right to eject plaintiff and his family from the depot building must be exercised with due regard to the safety and health of plaintiff's family under the circumstances, which here warranted a submission to the jury of the question whether they were wrongfully put out and entitled to recover therefor.

**2.—Damages—Fright.**

Evidence that plaintiff's wife was frightened by an officer being called to put her out of the depot and suffered injuries from such fright held sufficient to authorize the submission of such injury as an element of damages recoverable for wrongful ejection from the depot.

**3.—Damages—Humiliation and Mental Pain.**

Plaintiff seeking to recover damages for the wrongful ejection from a waiting room at a station by the agent of a railway company could recover for humiliation and mental pain suffered by himself and wife because of the harsh manner and language of the agent in his act of calling the town marshal to enforce such ejection.

**4.—Search for Concealed Weapons.**

Evidence considered and held sufficient to support submission of the question whether the act of an officer in searching plaintiff in the waiting room of a depot for concealed weapons—he carrying none—was done at the instigation of the railway agent.

**5.—Act of Officer.**

One remaining in the waiting room of a railway depot without right was not violating any penal law nor threatening injury to property, and the act of a town marshal in compelling him on demand of the agent of a railway station to leave the premises was not one done in his official character so as to exempt the railway company from responsibility for the wrongful humiliation suffered in consequence.

**6.—Search—Right to Carry Arms.**

One causing an unarmed traveler, not violating the law or disorderly, to be searched for concealed weapons in the public waiting room of a depot, is not excused by the fact that he had been informed that such traveler was armed, he having the right as a traveler to carry arms.

**7.—Evidence—Expression of Present Suffering—Harmless Error.**

Expressions of present suffering are admissible in proof thereof, and if such admission was erroneous, it was rendered harmless where afterwards withdrawn from the jury by the court.

**8.—Argument of Counsel.**

Improper language of counsel is not ground for reversal where promptly withdrawn on objection.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*Ogden, Brooks & Napier* and *A. H. Dashiel,* for appellant.

*Looney & Clark* and *Mulkey & Hamilton,* for appellee.

LEVY, Associate Justice.—Appellee brought this suit against appellant to recover damages on account of injuries and physical and mental pain occasioned his wife, and humiliation caused to himself, by reason of the alleged several wrongs committed against them by appellant. By his petition appellee claims that he and his wife on May 24th went to the passenger depot of the appellant at its station of Enloe, for the purpose of taking passage on its regular passenger train to Commerce, which was due to leave that station late in the afternoon, and that when they arrived at said station they found that the train had already gone, and they continued to remain in the depot waiting-room for their next train by permission and without objection on the part of the depot agent until after the northbound passenger train going to Paris passed at about 10 o'clock p. m.; that at the time the train passed it was raining, and continued to rain for several minutes after said train passed; that immediately after the train passed, and while it was still raining, the appellant's agent entered the waiting-room and demanded that they leave, and that upon appellee's request that he and his wife and child be allowed to remain there in the room and not be required to leave the same until it ceased raining, the said agent, in a rough, angry and insulting manner, informed them that they would have to leave at once, and that if they did not do so he would have the town marshal eject them, and thereupon unnecessarily and without provocation therefor called the town marshal, and they were forced to leave the room and go out into the rain; that appellee's wife at the time had her regular menstrual sickness, and by reason of

being forced into the rain got wet and her sickness suddenly ceased and failed upon her, causing serious and permanent injuries, as claimed. Appellee also alleges that on the next morning after the ejection, when he and his wife and child returned to the said station to take the passenger train to Commerce, and after they became passengers, and in order to further humiliate them and bring them into public disrepute and ridicule, the agent of appellant called an officer of the law and advised, procured and instructed said officer to search the appellee then and there for concealed weapons, which the said officer proceeded to do before many people present and in the agent's presence and by his advice, and that appellee was greatly humiliated thereby; that appellee did not have any weapon about his person.

The appellant answered by general denial. The case was tried to a jury, and in accordance with their verdict a judgment was entered for the appellee, and the appellant brings the case on appeal seeking to have the same revised for the errors assigned.

The evidence substantially shows that appellee and his wife and child, and a Mr. Martin and his wife and children, on May 24, 1906, came from a distant point in the country to the passenger depot of the appellant at Enloe, a small village, for the purpose of taking the first passenger train out to Commerce. Arriving at the depot between 5 and 6 o'clock in the afternoon, appellee learned that the late evening train had already gone out. He then proceeded to box up some goods which he had on the depot platform for shipment. While he was at work boxing up these goods his wife and child, and Martin and his family, remained in the depot waiting-room. He finished boxing up his goods for shipment between 8 and 9 o'clock and went into the depot waiting-room, where the other members of the party were, and Martin went out and brought back a lunch and they all ate the lunch. The depot agent saw and knew they were on the premises and in the waiting-room, and made no objection to their being and remaining there. Shortly after boxing up the goods for shipment it began to rain. When the party came to the depot it was good weather and not raining. Appellee then learned that the next train to Commerce would not arrive until 5 o'clock in the morning. Upon this knowledge the party decided among themselves to remain in the waiting-room until the train arrived. About 10:10 p. m. appellant's northbound passenger train came in. It was raining at the time the train came. Between 15 and 20 minutes after the said train had left the station the appellant's depot agent entered the waiting-room and informed appellee that he and his wife and the others would have to leave, as he wanted to close up the depot and go home. There is a conflict of evidence as to what the agent said and did at the time he demanded of the appellee and his wife to leave the room, and as to whether it was raining at the very time they left the depot waiting-room. The verdict of the jury settled this conflict in favor of the appellee, and we assume the truth of the finding involved in a general verdict. The evidence offered by appellee and his witnesses in this respect shows that when the agent came into the waiting-room he said: "Where are you folks going?" Appellee replied: "To Commerce." The agent said: "Then you will have to get out of here; I will have to close up." The appel-

lee said he "didn't see how we could get out, and it raining that way, with our women and children," and requested the agent at the same time "to wait until it quit raining," telling the agent at the time, "my wife ain't in no condition to get out in the rain," intending for it to be understood by the agent that his wife had her menstrual flow and period on her at the time, and she was in fact in her menstrual period. The agent answered the request by, "It don't make any difference; you will have to get out just the same." The appellee then replied, "You will have to put me out. I won't get out in the rain." To this the agent answered, "If you don't get out I will call the marshal and have you put out;" and further said at the same time, "This is no lodging house. Haven't you got any money?" Appellee said, "Yes, sir, I have money." And the agent thereupon, without further say, called to the marshal, who was standing at the window, and ordered him to come and eject them. The marshal appeared and the wife became very much frightened, and thereupon the appellee said, "Before I'll be arrested we will get out;" and they all proceeded along with the marshal to leave the room. The agent's manner and conduct is shown by the evidence to have been rough, angry and harsh. Appellee and his wife then proceeded at once to the only lodging house in the place, which was run by the town marshal and which was variously estimated by the witnesses to be from 150 to 300 yards distant from the depot, about one-third of the way covered by awnings. It was shown by the evidence offered by the appellee that it was raining at the time of the ejection and plaintiff's wife got "damp to the skin," and from the wetting her menstrual flow checked and failed upon her, and from the effects of which her health became seriously and permanently impaired and she suffers much. It ceased to rain in a very few minutes after the appellee and his wife got to the lodging place.

The next morning appellee and his wife returned to the depot to take the train to Commerce, and purchased their tickets. Just before the arrival of the train on which they were to go to Commerce a deputy sheriff came into the waiting-room and publicly, in the presence of the other passengers, made a search of the person of the appellee for deadly weapons. He did not find any weapons on the person of the appellee, but found only a claw-hammer which he had in his pocket and which he had used in boxing up his goods. There is evidence to sustain the finding of the jury that the appellant's depot agent procured and instigated this search to be made, without probable cause therefor, and we assume the truth of these findings. The evidence shows that the search by the officer was made upon the information, advise and suggestion of the agent, and without warrant therefor, and that the search caused humiliation and embarrassment to the appellee.

From the facts in this case we conclude that the appellant was guilty of the wrongs complained of in the petition, and that the evidence is sufficient to sustain the amount of recovery herein for the physical injuries and pain and suffering and humiliation caused the appellee and his wife.

*After stating the case.*—The important question of the case is pre-

sented by the first assignment of error, which complains of the refusal of the court to give the following special charge to the jury asked by appellant.

"Under the undisputed evidence in this case the plaintiff and his wife were not passengers of the defendant on the night of May 24, when they claim to have been put out of the depot, and therefore the defendant had a right to close its depot and to require plaintiff and his wife to leave the same, and they are not entitled to recover against the defendant anything by reason of any injuries they may have sustained by getting wet after leaving the depot, and you will not consider the injuries so claimed in arriving at your verdict."

The effect of the charge was to peremptorily instruct the jury that in the circumstances appellee could not recover because they were not passengers. Considering the circumstances in this connection, it clearly appears that appellee and his wife were not bare intruders upon the premises of the appellant, but came there for the purpose of transacting business with it as a common carrier. They remained upon the premises for some time, preparing their goods for shipment. After finishing boxing their goods they then went immediately into the waiting-room, without objection on the part of the agent and with his knowledge. It soon afterwards began to rain. When they came to the depot it was not raining. This condition of the weather caught them at the depot unprepared for it, and they were strangers in the village, which had bare accommodations. While it was raining appellant's agent required them to leave the depot in order to close it up and go to his home. Appellee protested against leaving the room at the time because of the physical condition of his wife, which was made known to the agent, and he asked him "to wait until it quit raining," which it did in a short time thereafter. The agent refused to wait, and at once, through means and aid of an officer of the law, compelled them to leave the room and go out in the rain, and the wife got wet, and, being in her monthly sickness, became sick, which resulted in serious injury to her.

We do not think that because appellee and his wife were not passengers in a legal sense, that in view of the peculiar circumstances of the case the appellant was absolved from any legal obligation to exercise reasonable care and prudence in expelling appellee's wife from the waiting-room at the time. The law does not permit even trespassers to be exposed wantonly to perils of life or health. It is a well-established rule that a railroad company owes a licensee upon its premises the duty of taking ordinary care to avoid injuring him. The same duty applies in its waiting-room, as elsewhere on its premises, to such licensees. Being in the waiting-room by permission, and at the time of the expulsion, from necessity of the situation, it was the duty of the appellant to the appellee and his wife to permit them to remain in the depot "until it quit raining," and to refrain from expelling them while it was raining. It is shown to have stopped raining in a very few minutes thereafter. The expulsion occurring at a time and under the circumstances as disclosed in the facts was a negligent disregard of the duty that was owing to appellee, and constitutes an actionable tort. An action for negligent expulsion is not restricted to a con-

tractual relation, but recovery may be had as for a tort. Thompson on Negligence (supplement), section 3262. A carrier has the right to eject a person from its train who fails and refuses to pay fare, but the right to eject must be exercised in a proper manner and at the proper time and place, and negligently ejecting such person in a manner or at a time or place as to endanger his safety or health makes the carrier liable for the consequences proximately resulting from such expulsion. 2 Hutchison on Carriers, section 1084; 6 Cyc., p. 563. We can see no valid reason why the same rule of law that governs the carrier in ejecting a person from its train who has failed to pay fare should not obtain and be applicable to this instant case. The legal principle involved in the rule is the same, whether the negligent expulsion occurs from the vehicle or from the waiting-room, as under the facts in this case. The rule is founded on the principle that it is the duty of the carrier to refrain from exercising the right of expulsion in a manner and at a time where injury would result to the person ejected. Such rule holds to the person ejected the right to his safety of health, limb and life, and to the carrier the obligation of due regard to his safety from such injuries in the exercise of the right to expel. For a violation of this duty or obligation to the person expelled an action in tort will lie. If it is a tort to expel a female from a train under conditions that endanger her health, it is none the less a tort to expel her from the depot waiting-room under the circumstances of this case. The right of an owner of a house to terminate the privilege of a person invited into such house to continue to remain therein exists under proper limitations, but he commits a tort if he expels such person therefrom in a negligent or wrongful manner. In the light of these rules of law, appellant owed the duty to appellee's wife, in the particular circumstances of the case, to not expel her from the depot waiting-room while it was raining, knowing at the time that in her physical condition to get wet would endanger her health. The request to stay in the room, under the circumstances, "until it quit raining," was reasonable, though an inconvenience to the agent. But the law regards life and health as paramount to mere inconvenience. In nowise does such rule of law interfere with the right of the appellant to the proper use of its property, nor with the right to make reasonable regulations concerning the closing of its depot. But it restricts the right of expulsion therefrom of a person to whom it owes the duty of ordinary care to the proper exercise of ordinary care and prudence. The force of the rule applicable to negligent expulsion is laid down in the case of Brown v. Chicago, R. I. & P. Ry. Co., 1 N. W., 487, where the court, in passing on an instruction given the jury, says: "In exercising the right of ejection reasonable and ordinary care should be employed. In determining whether such care has been exercised all the circumstances should be considered, as the physical condition of the person ejected, the time, whether in daylight or late at night, the place of the ejection, the character of the weather, whether pleasant or inclement. The rules of law, as well as the dictates of humanity, require that the ejection shall occur at such place and be conducted in such manner as not unreasonably to expose the party to danger." We are of the opinion that the facts presented an issue for the jury to

determine, and that the court did not err in refusing the special charge. We do not think the cases of International & G. N. Ry. Co. v. Pevey, 30 Texas Civ. App., 460, 70 S. W., 778, and Texas Mid. Ry. Co. v. Griggs, 106 S. W., 411, presented the question here involved in this case, and therefore would not be applicable nor rule the case. The facts in those two cases make them clearly distinguishable from the instant case. The assignment is overruled.

By its second assignment of error the appellant complains of the third paragraph of the court's charge. There was no error in the charge as complained of. There was evidence on which to submit an issue as to the appellee's wife being frightened, and authorize a recovery by reason thereof. The agent's calling the officer, and the officer's appearing, were acts sufficient to impress a woman with fear in her then situation. Appellee's wife testified: "I had never been arrested; nobody ever threatened to arrest me. That man threatened to have us put out by an officer, and the way he talked scared me and made me weak and nervous, and I could hardly stand up." The doctor testified that sudden fright or excitement might and would likely upset the functions of the body, and especially the menstrual flow of a woman. If appellant wrongfully ejected appellee's wife at the time and under the circumstances and in an improper mode and manner, he was entitled to recover for all the damages proximately resulting from the wrongs. A double recovery was not authorized by the instruction. The instruction authorized a recovery for the physical and mental pain suffered by the wife by reason of fright and getting wet while her menstrual period was on her, and the fourth paragraph authorized a recovery for humiliation and pain of mind caused to the appellee himself by reason of being ejected by and searched by an officer. The second assignment of error is therefore overruled.

The fourth assignment is overruled. The appellant can not predicate reversible error in the case, on the issue of being ejected by means of an officer of the law, upon the charge requiring the jury to find, before they could return a verdict for the appellee, that the agent, "without probable cause therefor, wantonly or maliciously threatened to have them ejected by an officer, and ordered the town marshal to take charge of them or to put them out." Such charge was more favorable to appellant than authorized by law under the facts. There was evidence to support the finding required by the instruction. The appellee and his wife and other witnesses testified that the agent became, and was, angry, and spoke in a rough, loud and harsh manner, and in such mood ordered the marshal to "take charge of them." It conclusively appears that at the time the agent called the officer to remove the appellee and his wife they were not violating any law or injuring any property. Such facts, considered in connection with the further facts that appellee and his wife were not bare intruders in the waiting-room, and requested the agent to wait until it quit raining before he compelled them to leave, because of his wife's condition, are strong facts going to show a negligent disregard of the obligation due by the appellant to the appellee at the time. As determined in the preceding assignment, the charge is not subject to the objection that it authorized a double recovery for humiliation and pain, nor was it

calculated to cause the jury to allow a double recovery for the same. In the third paragraph the language of the charge was that the jury should find for appellee "such sum as will reasonably compensate him for such mental and physical pain as she suffered, if any." In the fourth paragraph it authorized the jury to find for the appellee "such sum as will reasonably compensate him for such humiliation or pain of mind, if any, suffered by him."

The fifth and sixth assignments are considered together, and are overruled. There is evidence in the record sufficient to require the court to submit to the jury for finding whether the agent instigated and caused the appellee to be searched for a pistol by an officer of the law. The facts testified to by the appellee's witnesses are to the effect that the officer came into the waiting-room, and, after holding a short conversation with the agent at the window, turned around and then asked the agent, "which man is it that has the gun?" and that the agent pointed directly to the appellee and said, "That fellow sitting right over there." The officer testified that, "as I came from home to take this early morning train the agent was standing in the north part of the station, and he remarked to me that he had looked for me the evening before—and made the remark that he thought plaintiff had a gun on that evening before; I passed on down and went to the sitting-room at the station, and as I went in some one pointed this man out to me, and I don't remember who the man was. Whoever it was said there was the man supposed to have the gun, and that he had it on them. So I went up and told plaintiff I would search him. I searched him and found a hammer." From these facts the jury would be authorized to find that the agent informed the officer that appellee had a gun on, and that he urged the officer to search appellee. The credibility of the witnesses and inferences to be drawn from the facts are for the jury. These circumstances, considered in connection with appellant's evidence, presented evidence, as a whole, of such a character that ordinary minds might differ as to the conclusion to be drawn from it. Lee v. International & G. N. Ry. Co., 89 Texas, 588, 36 S. W., 63.

The court did not err in refusing to give to the jury a peremptory instruction in the case to find for appellant, and the seventh assignment is overruled.

The court did not err in refusing to give the special charge complained of in the eighth assignment. The appellee was not violating any penal law, or inflicting or threatening to inflict any injury to property; and as the agent called the marshal to merely put them out of the waiting-room, such act of ejection on the part of the officer would not be in his official character so as to exempt the appellant from responsibility for the humiliation suffered by appellee in consequence of the ejection. Texas & N. O. Ry. Co. v. Parsons, 102 Texas, 157, 113 S. W., 914; Jardine v. Cornell, 14 Atl., 590.

The special charge which the court refused and is made the basis of the ninth assignment, is to the effect that if the depot agent had been informed by a reliable or credible person, and so believed, that appellee had a pistol on, then the agent had the right to point out appellee to the officer in response to the officer's inquiry of where was

the man that had the gun on. The court did not err in refusing the charge. At the time appellee was a passenger, and the agent of appellant owed him the duty to protect him against personal rudeness and every wanton interference. Appellee was sitting in the room with a child in his arms, and violating no law, nor threatening to do so, by either acts or conduct. If appellant's agent wrongfully caused and urged the officer to search him, and pointed him out to the officer as a violator of the law when he was not, then the appellant would not be relieved from responsibility for the agent's act upon the ground that the agent believed or had been informed that appellee had a pistol on. If the appellee had a pistol (which the evidence shows he did not), he was a traveler within the meaning of the law, and had the legal right to carry arms. As he was violating no law at the time, he was not liable to arrest.

By the tenth and eleventh assignments it is contended that the court erred in not sustaining the second and third special exceptions to the petition. The precise objection presented by appellant is that the petition showed on its face that plaintiff and his wife were not passengers, and the agent had the right to require them to leave the depot. The ruling made on the first assignment disposes of this contention against the appellant. While it does appear in the petition that the appellee pleaded that he and his wife decided, after they missed their train in the late afternoon, to remain in the depot and sit up in order to catch the next early morning train, yet an inspection of the entire petition and the proper interpretation of all the allegations will show that his right to recover is not predicated upon any claim that it was the duty of the appellant's agent to let them remain there all night and to keep open the depot all night for the convenience or accommodation of appellee and his wife, but the facts alleged rest the cause of action upon the legal contention that appellee and his wife, being in the waiting-room at the time and with the knowledge of the agent, it was the duty of the appellant, acting through its depot agent, to refrain from exercising the right of ejection at a time when it would appear to a person of ordinary prudence that to eject the appellee's wife would result in injury to her. The court submitted the case to the jury upon the ground of negligent expulsion only under a proper charge.

The court did not err in admitting the testimony complained of in the twelfth assignment of error. The testimony was admissible as expressions of present suffering and exclamations of pain at the time. The bill of exception, however, shows that this testimony was afterwards withdrawn from the jury and the court specially directed them not to consider it. The assignment is overruled.

Though improper for counsel to so do, yet reversible error could not be predicated in this case upon the language of counsel in his opening argument complained of in the thirteenth assignment. The force of the words was promptly withdrawn by the attorney in his further and extended statement to the jury in respect thereto. Considering the amount of the verdict in the case, it does not show reasonably that the jury could have been inflamed or impassioned by the language used.

The fourteenth, fifteenth and sixteenth assignments of error complain of the refusal of the court to grant a new trial. 'We do not think the court erred. The evidence is sufficient, we think, to support the findings of the jury in this case.

Finding no error in the case it was ordered affirmed.

*Affirmed.*

Writ of error granted. Affirmed, 103 Texas, ——.