MEDLIN MILLING CO. v. BOUTWELL.

(Supreme Court of Texas. Feb. 8, 1911.)

1. MASTER AND SERVANT (§ 202*)—INJURIES TO SERVANT—LIABILITY OF MASTER—SCOPE OF EMPLOYMENT.

A corporate employer is not liable for injuries to a new employé inflicted by its officers and employés while attempting, in sport, to lay the new employé across a barrel for the purpose of paddling him, as an initiation into the service, though the custom of initiating all new officers and employés had existed for years with the knowledge and acquiescence of the officers and managers; the act both of the officers and of the employés being wholly without the scope of their authority.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 202.*]

2. MASTER AND SERVANT (§ 96*)—INJURIES TO SERVANT—KNOWLEDGE OF DANGER.

An employer may become liable for negligently exposing a servant to a hidden danger, known to the master and unknown to the servant, which is incurred by the latter in doing the work which he is employed to do, although the danger arise from the conduct of strangers.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 96.*]

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by E. M. Boutwell against the Medlin Milling Company. From a judgment in favor of plaintiff (122 S. W. 442), defendant brings error. Reversed and rendered.

J. T. Jones, for plaintiff in error. J. P. Copeland, J. P. Yates, and H. L. Carpenter, for defendant in error.

WILLIAMS, J. This writ of error is prosecuted from the judgment of the Court of Civil Appeals affirming that of the district court in favor of defendant in error (plaintiff) against plaintiff in error (defendant) for damages for a personal injury inflicted on the plaintiff, a new employé of the defendant, by its other employés while attempting, in sport, to lay him across a barrel for the purpose of paddling him, a process which they called the "initiation" into the service. The defendant is a milling corporation, and at the time in question and for years before had a president, general manager, foremen, and other employés and servants. The custom of "initiating" all new officers and employés from the president to the lowest, in the manner indicated, which had commenced several years before plaintiff's entrance into the service, seems to have been observed with reference to all with perfect impartiality; and it is, perhaps, needless to add that they all knew of it. About a week after plaintiff's employment, several of the employés, including one of the foremen, attempted to subject him to the process, and a struggle followed in which he received the injuries of which he complains.

These seem to us to be all of the facts to be taken into consideration in reaching a decision, and we can discover in them no basis for legal liability on the part of the defendant. The defendant was held responsible for the assault committed by persons in its service because the practice had been pursued with the knowledge and acquiescence of those who were its officers and managers, which fact was held to justify the finding that defendant had authorized the assault. But what, we may ask, as such officers and managers, had they to do with the custom? It was a practice of the men who happened to be officers, or employés, of the corporation in an affair of their own, and not in or about any business of that corporation. Officers as well as employés were engaged in it as individuals and not as representatives of the company. Their knowledge of and acquiescence in it was simply that of men concerning the conduct of persons pursuing ex-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

clusively their personal ends. About a matter of that kind they were wholly without authority to act for or bind their principal. It is in the assumption that the conduct of the officers with reference to such a matter is to be treated as that of the corporation the fallacy lies. Such a proposition is true only when the officer acts or fails to act in some business of the corporation, the conduct of which lies within the scope of his authority and in which he is employed to represent it. That a corporation may expressly or impliedly authorize the commission of assaults and be made liable for those committed by its agents which it so authorizes is undoubtedly true; but it does not authorize its employés to commit assaults merely by employing and failing to restrain them. The assault, unless expressly authorized, must come within the scope of that which the servant is employed to do. Nor does it by the mere selection of officers empower them to make it responsible for their action or nonaction in or about matters entirely outside the sphere of its business. In such affairs the officers and employés do not act or acquiesce as representatives, but as free agents responsible for their own conduct. We believe that the full law of this case is contained in the following passage from Labatt's Master & Servant, § 537: "Whatever difference of opinion there may be as to the character of the relations which must be shown to exist between the delinquent and the injured employés, in order to affect the master with liability, it is universally agreed that the general rules of the law of agency are controlling in all cases to this extent: That, on the one hand, if the act was within the scope of such employé's authority, the master cannot escape liability on the ground that it was done in direct violation of his orders, and that, on the other hand, there can be no recovery, where the act or order which caused the injury was entirely outside the scope of the authority of the delinquent employé. If the act or order had no reference to the master's concerns, there is, of course, no liability on the master's part. But, even if this point is determined in the plaintiff's favor, he must still fail, unless he can show that the superior servant had authority, either express or implied from the nature of his functions and the regular course of the business, to do the act or give the order alleged to be negligent. The ultimate and essential question is whether the vice principal had ostensible authority to give the orders which led to the injury. Hence, if a representative capacity is bestowed upon a superior servant by general directions to obey his orders, that capacity continues, so far as the subordinate receiving those directions is concerned, until he is actually informed that the authority so given has been withdrawn or restricted. But in cases of this class it is held that the mere belief of the injured servant that he had been directed to obey the orders of the delinquent will not be sufficient to fasten responsibility on the employer, if, as a matter of fact, no such directions had ever been given. In most kinds of business authority to commit acts of personal violence amounting to a battery cannot be inferred, for this reason, if for no other, that larger powers cannot be imputed to an agent than the principal himself possesses. A master, therefore, cannot ordinarily be held liable for the act of a supervising employé in beating a subordinate, even though it was for the purpose of furthering the master's business by compelling him to work."

An employer may become liable for negligently exposing a servant to a hidden danger, known to the master and unknown to the servant, which is to be incurred by the latter in doing the work which he is employed to do, although it arise from the conduct of strangers; but no such case is either alleged or proved. 1 Labatt, § 129, and cases cited. It is not the legal duty of the master to protect the servant from unlawful assaults, by strangers, and another servant committing such an assault not in the scope of his employment must be regarded as a stranger. Questions somewhat like those here involved are discussed in Lewis' Adm'r v. Taylor Coal Co., 112 Ky. 845, 66 S. W. 1045, 57 L. R. A. 447; Kelly v. Shelley R. Co. (Ky.) 22 S. W. 445.

No liability of the defendant having been shown, it is proper, in reversing the judgment, to render final judgment for defendant.

Reversed and rendered.

BROWN, C. J., disqualified and not sitting.