PULLMAN CO. v. RANSAW et al. (No. 827.)

(Court of Civil Appeals of Texas. El Paso. April 11, 1918. Rehearing Denied May 9, 1918.)

1. MASTER AND SERVANT ☞100(1)—RELEASE FROM INJURIES—ASSUMPTION OF RISK.

A Pullman porter's employment contract, assuming "all risks of accident or casualties while employed on or about cars" of the company "incident to such employment," would not relieve the company for liability for injury to the porter suffered being ejected from his car by watchmen who had been instructed by the company to put off any one found on the car; the porter having been instructed to remain on the car, and not notified of the conflicting instructions given the watchmen, since such contract could not relieve the company from the consequences of its wrongful acts.

2. MASTER AND SERVANT ☞302(3)—INJURIES TO SERVANT—ACT OF FELLOW SERVANT.

Where a Pullman porter, remaining on his car under express orders, was injured while being ejected from such car by company's watchmen acting under inconsistent orders, it was not necessary to a liability against the company that it should have authorized the specific acts of the watchmen in carrying pistols or shooting plaintiff, if the watchmen were acting within the scope of their duties in putting the porter off the car.

3. MASTER AND SERVANT ☞302(3)—LIABILITY FOR SERVANT'S ACTS.

Where one servant is injured by another servant while the latter is in direct discharge of a duty, though in its performance making use of instrumentalities and using more force than expressly authorized or instructed, the master cannot escape liability on the ground of abuse of authority by the latter servant.

4. MASTER AND SERVANT ☞265(4) — WORKMEN'S COMPENSATION—PLEADING.

In order that an employer may take advantage of Employers' Liability Act (Acts 33d Leg. c. 179, pt. 1 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5246hh]) § 2, providing that the negli-

gence of a fellow servant shall not be a defense except as authorized by such section, he must allege and prove his exemption thereunder.

5. MASTER AND SERVANT ☞287(2)—INJURIES TO SERVANT — EVIDENCE—INCOMPETENCY OF FELLOW SERVANT.

In an action by Pullman porter against the company for injuries sustained while being ejected from his car by company watchmen acting under express orders, which were contradictory to plaintiff's orders to remain on his car, it was proper for the court to submit to the jury, as a ground of negligence, the watchmen's incompetence, in that they were unable to speak English.

6. DAMAGES ☞130(1)—EXCESSIVENESS—PERSONAL INJURIES.

Where a Pullman porter suffered personal injuries in being thrown from his car by defendant's watchmen, illegally arrested and shot, whereby he suffered humiliation, mental pain, loss of time, and expenses for medical treatment, a verdict of $2,750 was excessive, and should be reduced to $1,800.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Ben Ransaw and another against the Pullman Company. Judgment for plaintiffs, and defendant appeals. Affirmed on condition.

Burges & Burges, of El Paso, for appellant. W. P. Brady, of El Paso, and Earl Anderson, of Phœnix, Ariz., for appellees.

WALTHALL, J. Ben Ransaw, appellee, filed this suit against the Pullman Company and the Texas & Pacific Railway Company to recover damages itemized as follows: For doctors, nurses, hospital, and medicines, lost time from work, humiliation and mental pain and anguish suffered by being illegally arrested by appellant's watchman, physical and mental pain and suffering by reason of a gunshot wound, stating a specific amount of damage sustained under each of said items. Ben Ransaw was in the employ of the Pullman Company as porter on one of its cars, and was authorized and instructed at Dallas, Tex., by the Pullman Company, and it was made his duty, to remain on and in said car at all times until he was relieved by the said company. It was his duty, under said instruction, while on said car to look after said car and its equipment and protect same, and keep said car and its equipment, as well as himself, in readiness to move at any time. While so employed, said car was sent to El Paso and side-tracked in the Texas & Pacific Yards. He continued to remain on said car as instructed, and perform his said duties thereon. While on said car at El Paso, the Pullman Company sent two watchmen to guard said car, and instructed said watchmen to put any person out of said car that they might find therein, and to turn any such person over to the police. The Pullman Company neglected to notify the watchmen of plaintiff's presence on said car, and of his right to be thereon. While plaintiff was on said car and perform-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing his said duties, the watchmen, in the performance of their duties, found plaintiff in said car, and, acting within the scope of their employment, attempted to put plaintiff off said car, and in doing so shot plaintiff. The watchmen were Mexicans of young and immature age, could not read, write, speak, or understand the English language, and could only speak the Spanish language, and plaintiff and all the other parties on the car could speak and understand only the English language. The Pullman Company gave contradictory instructions to plaintiff and said watchmen, in that plaintiff was to stay on said car at all times, and the watchmen were to put any person off said car found thereon. There is but little conflict in the evidence, except as to the details of the watchmen's effort to put appellee off the car. The conflict in the duties of the appellee and those of the watchmen, and the inability of appellee and the watchmen to speak the language of the other, by appropriate pleading, are assigned as negligence. The case as to the Railway Company was dismissed. The Pullman Company answered by general and special exceptions, general denial; denied that it authorized the watchmen to arrest anybody at any time, or place, or to arm themselves, or to use force; alleged that plaintiff was shot in a personal difficulty with the watchmen brought on by plaintiff; alleged that by contract in writing, appellee assumed the risk and released appellant from liability. The jury returned a verdict in favor of appellant for the sum of $2,750.

The petition is sufficient as against the two special exceptions urged against it, and the first two assignments claiming error in not sustaining them are overruled.

[1] Appellant offered to read in evidence from the contract of employment between appellant and appellee the fourth paragraph, providing:

"I assume all risks of accident or casualties by railway travel, or while employed on or about cars or property of said company situated on the railroad or other premises belonging to, or controlled by another, or others, or otherwise incurred, incident to such employment and service"

—and acquitting the company from liability for injuries received in such employment. The court excluded the paragraph, and its exclusion is made the basis of the third assignment. We think the court was not in error, under the facts shown, in excluding as evidence the paragraph of the contract. The paragraph could not relieve appellant against the negligent acts pleaded. As said by the Supreme Court in Barnhart v. K. C., M. & O. Ry. Co. of Texas, 107 Tex. 638, 184 S. W. 176, the effect of such a contract would be to relieve the company from the consequences of its wrongful acts, and to impose by contract upon its servant the burden of bearing the loss, which did not, by law, rest upon him, but did rest upon the

company. The conflict in the duties assigned to the employés, the one to remain on the car and care for it and its equipment, and the other to put any one off the car found thereon and neither being able to speak the language of the other, makes the law announced in the case referred to, pertinent and applicable to the facts of this case. The court was not in error in refusing to instruct the verdict in appellant's favor, as complained of in the fourth assignment. We think the evidence was amply sufficient to require the submission of the case to the jury on the issues tendered, viz.: The appellee's right and duty to be on the car when appellant's watchman ejected him from the car and in doing so shot him; the competency of the watchman in not being able to write or speak the English language, especially in view of the conflicting orders given by the company to the two employés, to appellee to stay on the car and protect it and its equipment, and to the watchman to put any one off found on the car, neither being able to speak the language of the other, and each acting in the line of his duty. The evidence on the two issues was practically undisputed; the two employés were acting strictly within their several lines of duties, and the only conflict in the evidence is as to what each did, and the time in order of doing it, in the conflict that followed the watchman's effort to put appellee off the car.

The cases to which appellant refers us are not in point, and do not sustain its contention. In Medlin Milling Co. v. Boutwell, 104 Tex. 87, 133 S. W. 1042, 34 L. R. A. (N. S.) 109, Boutwell was injured in the observance of a process which the employés called an "initiation" of a new man into the service, and which had grown into a custom. The observance of the custom was not in or about any business of the company, or the performance of any duty the employés owed the company, but was purely an affair of their own. In G. H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367, an employé of the company in its roundhouse, while using compressed air in the line of his duty, turned aside from that duty, and, in sport, turned it on an employé, causing injury from which he died. The company was relieved from liability on the ground that the act causing the injury was not in the prosecution or furtherance of the employer's business, but was wholly an affair of the servant causing the injury. The other cases have a similar bearing.

The appellant, by special charge, requested the court to instruct the jury that:

"It is the law of this state that where a servant or employé of another, acting in the discharge of his duty, inflicts a willful and malicious injury upon another, he alone is responsible for the consequences of such an act, and the master or servant cannot be held liable therefor"

—and to find for appellant in the event the jury should find that either of the two watchmen shot the appellee, because of an assault or attack made by appellee on either of them, or if either watchman shot appellee in the belief that his attempt to escape was an assault upon either of them. The refusal of the court to give the charge is the ground of the fifth assignment. The proposition of law submitted in the charge has no application to the facts in the case. The evidence does not suggest that either watchman willfully or maliciously shot the appellee. The watchman was there representing the company and doing just what the company told him to do in putting the appellee off the car. It is true the evidence does not show that the company, or any one representing the company, told the watchman to carry arms, or to shoot the one found on the car. The company had no right to give the watchman either of such duties. We are of the opinion that the law is that, the watchman shooting the appellee, and thereby causing the injury complained of, while in the discharge and furtherance of his duty to the company, the company would be liable. The company could not, under the principle of law stated in the charge, thus relieve itself against liability from the effect of its own wrong in giving conflicting instructions to its two employés, the one to stay on the car, and the other to put him off. Texas & N. O. Ry. Co. v. Parsons, 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857.

[2] It was not necessary to a liability against the company that it should have authorized the specific acts of the watchman in carrying the pistol, or to shoot the appellee, if the watchman was acting within the scope of his duties to the company in putting the appellee off the car. Rucker v. Barker, 108 Tex. 280, 192 S. W. 528.

We hardly think the case of Medlin Milling Co. v. Boutwell, 104 Tex. 87, 133 S. W. 1042, 34 L. R. A. (N. S.) 109, to which appellant refers us, sustains its contention. In that case, while the men inflicting the injury were officers and employés of the company, as Judge Williams says in discussing that case, it was an affair of their own, and not in or about any business of that corporation, but was a process which they called "initiation" of a new man into the service.

[3] The sixth assignment claims error in the court's refusal to give the following charge:

"You are instructed that under the law of this state it is not the duty of the employer to protect the employé from unlawful assaults by strangers, and another employé committing such assault must be regarded as a stranger. And in that connection you are instructed that authority to commit acts of personal violence cannot be inferred, even though the act of violence be committed for the purpose of furthering the employer's business, for the reason that larger powers than those possessed by the employer cannot be imputed to the employé, but authority to commit such acts must be established by evidence to the satisfaction of the jury."

The rule stated in the special charge requested has no application to the facts of this case. There is no doubt that the assault committed by the watchman upon appellee, the porter on the car, was unlawful, but the watchman was acting in his capacity as the company's agent, and in putting the porter off the car was doing what the company instructed him to do. Texas & N. O. R. Co. v. Parsons, 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857.

In Rucker v. Barker, 108 Tex. 280, 192 S. W. 528, Judge Phillips for the Supreme Court said:

"It was not necessary for Rucker to have authorized the specific acts which Roberts committed in his treatment of Dyer in order to be liable in actual damages for Roberts' conduct. If Roberts at the time was acting within the general scope of his duties, as Rucker's employé, Rucker was responsible for his action, though it was in excess of Rucker's actual instructions."

True, in that case, Dyer was not an employé of Rucker, and the question of fellow servant did not enter into the case. But how much more was it the duty of the company to see that appellee, an employé, to whom it owed the duty, and is bound to take precautions not to injure. This is not a case in which the servant, the watchman, turned aside from the master's business, as in G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 600, 96 S. W. 1073, 10 L. R. A. (N. S.) 367, and inflicted injury upon a fellow servant, but one in which the servant was in direct discharge of a duty, though in its performance making use of instrumentalities, and using more force than he was authorized or instructed to use.

The question always is whether there was any authority, express or implied, on the part of the servant to do the act. Mr. Wood, in speaking of the liability of the master for the negligence of the servant, states the rule to be:

"The simple test is whether they were acts within the scope of his employment, not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders." Wood, Master and Servant, § 307. M., K. & T. Ry. Co. v. Warner, 19 Tex. Civ. App. 463, 49 S. W. 254.

The rule above stated is also sustained by many authorities both in this state and in other states. The master cannot escape liability on the ground of abuse of authority by the servant. Rucker v. Barker, supra, and same case discussed by Judge Jenkins, 151 S. W. 871, and cases there cited.

What we have said in disposing of the sixth assignment applies to the seventh and

eighth, and they are overruled. Under the eighth assignment, in which appellant complains of the refusal of the court to give to the jury its special charge, to the effect that, if they find that appellee was shot by reason of the negligent manner in which the pistol was handled by the watchman, such negligence was the negligence of a fellow servant, and, should they so find, to return a verdict for the company.

It is the contention under this assignment that, the watchman being a fellow servant, it was error: First, not to instruct that appellant could not recover; and, second, that, the watchman being a fellow servant, appellee must have pleaded and proved that it came within the class of employers to whom such defense was denied, and, having failed to do so, it was error not to give the requested charge presenting that common-law defense. We think there was no error in refusing to give the requested charge.

[4] The act of the 33d Legislature, page 429, and known as the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), and invoked by appellant to sustain its contention, marked an important change in the law in regard to the liability of employers for personal injuries to employés. Under the above act, the negligence of a fellow servant is not a defense, except as mentioned in the second section of the act. If appellant came within any exception under the second section, it was incumbent upon it to allege and prove its exemption thereunder. Dunaway et al. v. Austin Street Ry. Co. et al., 195 S. W. 1157. This it did not do. The assignment is overruled.

[5] The ninth assignment complains of the eighth paragraph of the court's general charge, because it submitted as a ground of negligence the unfitness or incompetence of the watchman, in that he could not speak the English language. It is claimed that neither the pleadings nor the evidence warranted the submission of the issue. We need not state the pleading or the evidence. The pleading is sufficient to raise the issue. The Mexican watchman, Moraza, who shot appellee, said:

"The foreman of the Pullman Company had employed me to work. He gave me instructions to the effect that I was not to let any one go into those cars. If one of the officials of the Pullman Company went in there himself, without an order or permit, not to let him in. * * * As I could not talk English, and this man (the other watchman) was working for the same company at another place, I went for him, to have him there with me. 'I * * * went inside and called the porter to come. I told him, 'Come here with me.' I told him in English, 'Hello, porter, please come on.' * * * I arrested three of them (porters). The negro was running out of the car at the time I shot him; I called them to stop. None of them stopped, and on that account I shot one of them. I was then inside of the car. The negro was getting off to run, getting down from the car. * * * The foreman knew that I had a pistol, because on one occasion, I pulled

my pistol out in his presence, and put cartridges in it, and he asked me, 'Have you got a pistol?' and I said, 'Yes' and he said, 'Be careful with it.'"

—and detailed the conversation with the foreman about having the pistol. He further said, "I cannot talk any English." Appellee, in detailing what occurred in the car, among other things, said:

"I did not know what the Mexican was doing there. I thought he was trying to hold me up. I did not understand anything he was saying. He did not act like he understood anything I was saying. I tried to reason with him in my language, but I could not get him to understand nothing. It looked like he come there to shoot me. * * * After he shot me, we clinched, and I put him down at that time. I then ran off, because he hollowed something in his language, and I seen another Mexican with a flashlight and gun coming through the car. I cannot speak Spanish at all. I cannot understand any of it. My duties representing the Pullman Company kept me there."

We think the incompetence of the watchman is made clear in view of the fact that he could not speak the same language of the porter, and in connection with their conflicting duties. Ruling Case Law, vol. 18, p. 721, states the rule:

"If a master knowingly employs servants who are incompetent by reason of their habits, or otherwise, he is liable for an injury occasioned to a fellow servant by their incompetency, just as he would be liable for any injury caused by a defective machine."

Ignorance of the language customarily employed is held to constitute incompetency. Ruling Case Law, vol. 18, page 727, and cases referred to under note 19.

There is no merit in the tenth and eleventh assignments, complaining of the eighth paragraph of the general charge on the ground that it was not shown that the company had any knowledge of the fact that appellee would enter the car while in waiting at El Paso, and that it was no part of appellee's duty to be on or about the car at that time and place. Appellee testified:

"The superintendent gave me orders to take charge of the car and stay with the car. * * * The superintendent in Dallas told me to stay with the car until it got back there."

His evidence is uncontradicted.

What we have said in disposing of the eighth assignment applies to the twelfth, and it is overruled. There is neither pleading nor proof of any fact to show the applicability of the second section of the Employers' Liability Act. Acts Regular Session 1913, p. 429; Dunaway et al. v. Austin Street Ry. Co. et al., supra.

There is no merit in the thirteenth assignment, claiming that the verdict and judgment is contrary to the law and evidence, in that it is not shown that the watchmen were authorized by the company to arm themselves, or that the company knew they were armed, nor that the company had authorized the watchmen to arrest any one. The case of Rucker v. Barker, supra, holds contrary to appellant's contention. Also Railway Co. v.

Parsons, 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857. The court in its charge complained of did not submit to the jury any question of authority of the watchmen to arm themselves, or any such authority conferred by the company.

[6] The fourteenth assignment complains that the verdict is excessive. We believe the verdict is excessive. If appellee will, within 15 days, file a remittitur of $950, reducing the judgment to the amount of $1,800, the judgment will be affirmed; otherwise, the judgment will be reversed and remanded.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes