## Missouri, Kansas & Texas Railway Company of Texas v. John Warner.

Delivered October 15, 1898.

**1. False Imprisonment—Arrest Without Warrant.**

An arrest without a warrant, for selling in the officer's presence a railroad ticket in violation of a city ordinance prohibiting others than the owner from selling railroad tickets, is unlawful, as the offense charged is not a felony, nor an offense "against the public peace." Articles 247 and 1010c, Code of Criminal Procedure, construed.

**2. Same—Oath and Qualification of Officer.**

Where a railroad company seeks to justify an arrest by its employe on the ground that he was a special policeman appointed under a city ordinance which requires him to qualify by proper oath before entering upon the duties of his office, it must show that the employe had taken the required oath of office.

**3. Same—Depot Master as Special Policeman.**

A railroad depot master who, as special policeman, arrests one who was selling a ticket on the depot platform, is acting within the scope of his authority where he has been appointed as special policeman at the company's request.

**4. Charge of Court—Undisputed Evidence.**

It is not error for the charge of court, in submitting an issue, to state the undisputed evidence relative thereto.

APPEAL from Dallas.   Tried below before Hon. EDWARD GRAY.

*Alexander, Clark & Hall,* for appellant.

*Harry P. Lawther,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee, as plaintiff, instituted this suit against appellant on the 24th day of December, 1896, to recover damages for alleged illegal arrest and false imprisonment and wrongful prosecution.   It is charged that the plaintiff was wrongfully arrested at the Missouri, Kansas & Texas depot in Dallas and restrained of his liberty, without warrant, on the night of the 26th day of October, 1896, by defendant's "depot master," W. L. Harper, acting with authority and under instructions from defendant to look after and protect the traveling public and defendant's property in and around said depot, and to keep order and watch and arrest all violators of the law.   That plaintiff was arrested for unlawfully selling a railroad ticket, confined in the "calaboose" of the city of Dallas for the night, and next morning prosecuted in the city court of Dallas for selling a railroad ticket, contrary to the ordinances of the city of Dallas, by defendant's said agent, and was adjudged not guilty by the court, said charge being dismissed from the docket and plaintiff discharged out of custody fully acquitted.   Plaintiff alleged physical and mental suffering.

Defendant pleaded general and special exceptions, general denial, and specially answered, that said W. L. Harper was, under and by virtue of articles 91-96, ordinances of the city of Dallas, a duly constituted, appointed, and authorized officer of the city of Dallas, namely, a special policeman at the Missouri, Kansas & Texas depot during the Dallas fair, governed by the same rules and regulations, and invested with the same powers and authority to preserve the peace as regular policemen, as provided for by said article 94; charged, as such officer, with the duty of arresting without warrant those he saw violating, in his presence, the laws of Texas or the ordinances of the city of Dallas, as provided for by articles 99, 104, and 114 of said ordinances.   That said Harper did on the night of said 26th day of October, 1896, see the plaintiff in his presence about to sell said ticket, whereupon without warrant as such officer, he arrested plaintiff for selling said ticket, and did, without any unnecessary force, violence, or injury, deliver plaintiff to another officer of the city of Dallas, namely, the jailer in charge of the city calaboose, near the Missouri, Kansas & Texas depot, and the jailer confined plaintiff in jail until the next morning, and then had him carried by the patrol wagon of the city of Dallas to the city hall, where the only complaint filed against him was the one charged in his petition, which was no complaint or charge whatever, for the reason, plaintiff being the owner of said ticket, the ordinance under and by virtue of which said complaint was drawn had not been violated.   That there being no other affidavit

against plaintiff, and no charge filed against him charging a violation of said ordinance or law, he was discharged by the city judge without a trial.

Defendant expressly denied that at said time when plaintiff was arrested, or at any other time, said W. L. Harper was authorized and under instructions from defendant to arrest all or any violators of the law or of the ordinances of the city of Dallas at or about its said depot, but alleged that it could not and did not attempt to create officers of the law, but that said Harper was an officer of the city of Dallas, receiving his instructions from and making his report to the chief of police or police board of the city of Dallas, as provided for by the ordinances of said city, and that defendant gave no instructions to and received no reports from said special policeman whatever, and did not hear of plaintiff's attempting to sell or selling said ticket, and did not know of an intention to arrest him on the part of any one, or of his arrest until long thereafter.

That defendant was in nowise responsible for plaintiff's arrest, or for his confinement over night in the jail, or for his being carried from the jail to the city hall in the patrol wagon, or for his confinement at the city hall, or for his alleged arraignment before the city judge.

The trial resulted in a verdict and judgment in favor of plaintiff; motion for new trial was overruled, and an appeal has been duly perfected from said judgment to this court.

*Opinion.*—Appellant's contention as raised by its third assignment of error is that the trial court erred in charging the jury that "as a matter of law arising from the undisputed evidence in the case, the arrest, detention, and imprisonment of plaintiff was unlawful."

The ground of objection to this charge is that Harper, when he made the arrest, was a special policeman of the city of Dallas and authorized by the ordinances of the city to make the arrest without warrant, the plaintiff having in his presence violated a State law, to wit, article 1010c of the Penal Code of Texas, in selling a railroad ticket as prohibited by said article; and further, because the charge took away from the jury the question as to whether Harper was acting as a special policeman for the city of Dallas when he made the arrest.

Plaintiff testified, "that on the morning of October 26, 1896, he purchased from the local agent of defendant, at Carrolton, in Dallas County, a round trip ticket from Carrolton to Dallas and return, and came to Dallas on said ticket. On the evening of the same day, plaintiff being at the time a member of the grand jury of Dallas County, and not being able to return home that evening, his duties as grand juror detaining him at Dallas, went to the Missouri, Kansas & Texas depot, in Dallas, to send word to his family, by any one who might be returning on the Missouri, Kansas & Texas evening's train to Carrolton, as to when he would return home. That about the time the train came up and dis-

charged its passengers on said evening he saw W. L. Harper, a stranger to him at that time, whom he supposed, from the letters on his cap and the way he was dressed, was in the employ of the Missouri, Kansas & Texas, and asked him if he wanted to buy a ticket, and he said, 'Let me see it?' and looking at his ticket said, 'That's all right,' and plaintiff, without selling him the ticket, walked on up the platform near the baggage room, where plaintiff in the presence of W. L. Harper was about to sell said ticket to a stranger for 10 cents; whereupon Harper approached to arrest plaintiff, and did arrest him just as he sold the ticket. Plaintiff asked him if selling the ticket to the stranger was not all right. That Harper said nothing, but took him by the left arm and then said, 'Come with me.' Plaintiff asked to know why he was arrested, and was told by Harper, 'for illegally selling a railroad ticket.' That he then said to Harper, 'I will get the ticket back;' that Harper said, 'You can't; come with me,' and they then walked to the jail about a block off, with Harper holding his arm all the way. That he told Harper on the way who he was, and that he did not want to be arrested and put in the calaboose; that he was known in the city and would give bail. That Harper took him to the calaboose and delivered him to the jailer, refusing his request to give bond. He was kept in the calaboose until the next morning. He says he was then placed in the hoodlum wagon with several boys and one woman, and driven in open daylight one half mile to the city hall. The hoodlum wagon is an open wagon with seats on the side."

Harper appeared in court and made an affidavit against him, charging that John Warner, in the city of Dallas, State of Texas, on the 26th day of October A. D. 1896, did unlawfully go upon the Missouri, Kansas & Texas Railway platform on the arrival of the passenger train, while passengers were leaving the same, and did then and there solicit custom, in that the said John Warner did offer for sale and did sell a railroad ticket, contrary to the ordinance in such cases made and provided.

By the terms of the ordinance "it is made unlawful for any person other than the owner or the authorized agent of such owner to buy or sell any railroad ticket upon the cars, or in the depot, or upon the platform, or on the premises of any railroad company within the corporate limits of the city." The ordinance fixes a penalty by a fine of not less than $10 nor more than $100 for such violation of the same.

It was not a violation of this ordinance for the owner of a ticket to sell the same.

Upon the case being called, the city attorney dismissed the same because the affidavit did not charge plaintiff with any offense against the ordinances of the city. The plaintiff was thereupon discharged.

It is contended that the court erred in instructing the jury that the arrest was unlawful, because if John Warner did not in selling the ticket violate the ordinance of the city, still he did violate a penal statute of the State of Texas, in that at the time of the sale of the ticket he was not

authorized to sell the same by the railroad company, as prescribed by article 1010c of the Penal Code.   By this article it is made the duty of all persons selling railroad tickets in this State to procure a certificate of authority from such railroad authorizing him to sell tickets.   Article 1010c of the Penal Code makes it an offense for any person without such certificate of authority to sell, barter, or transfer for a consideration any such ticket or coupon, and a penalty is provided for a violation of the statute.

The appellant contends that the arrest was not unlawful, because plaintiff had violated this statute.

If it be admitted that W. L. Harper was a special policeman and "peace officer" as defined by article 43 of the Code of Criminal Procedure, still he was not authorized to make the arrest under the State law, as the offense was not a felony nor an "offense against the public."   Code Crim. Proc., art. 247.

But appellant insists that the ordinance of the city of Dallas authorizes a policeman to make an arrest without a warrant "when a city ordinance or State law is violated in his presence."

This ordinance must be considered in connection with the State law. By the statute, a peace officer can not arrest without a warrant, except for a felony or for an offense "against the public peace."   Code Crim. Proc., art. 241.

Again, when an arrest is made for a violation of a State law without a warrant, the officer must immediately take the person arrested before the nearest magistrate.   Code Crim. Proc., art. 251.   See also Dill. on Mun. Corp., sec. 211.

If Harper arrested Warner because he was violating a State law, then he should have followed the statute and first procured a warrant.   1 Dill. on Mun. Corp., 4 ed., sec. 210.

The charge is not subject to the first objection.   Nor do we think the charge is subject to the second objection made by the appellant to it. The charge instructed the jury that the arrest was unlawful, and left the question to the jury to determine whether Harper in making the arrest was acting for the railroad company and within the scope of his authority, or whether he was acting as a special policeman of the city of Dallas.   This was a question for the jury.   Railway v. Donohue, 56 Texas, 163; Railway v. James, 73 Texas, 23; Pierce on Railroads, 279.

In what he have said we have treated W. L. Harper as a policeman of the city of Dallas.   The contention of plaintiff was that Harper was an agent of the defendant, and that in making the arrest he acted within the scope of his authority as such agent.   The defendant denied that Harper was acting for it in making the arrest, and denied that he was acting within the scope of his authority as depot master, and alleged that at the time of making the arrest he was special policeman of the city and was authorized to make the arrest, and as such officer he made the arrest.

The ordinances of the city of Dallas authorized the board of police,

whenever they may deem it necessary for the public interest, etc., to appoint special policeman who shall be governed by the same rules. The ordinances further provide that the special policemen who serve as such at the theaters and other places of amusement, at hotels, and other public places or establishments, may be appointed at the request of the owner or manager of such places, but they shall receive no pay from the city, and each and every appointment may at any time be revoked by the board of police.

Acting under this ordinance, the ticket agent of the railroad company at Dallas presented a written request for the appointment of Harper as special policeman. Upon this request the appointment was made. The record does not show that Harper took the oath of office as special policeman.

The city secretary testified that Harper was never sworn in as a special policeman. On cross-examination he said: "I did not administer Harper the oath. I will not swear that he was not sworn in by someone." Chief of Police Arnold swore that he did not know whether Harper was sworn in or not. Harper did not testify on this point.

The ordinance provides, "that after the appointment of any officer a member of the police force it shall be the duty of the city secretary to issue to him a certificate of such appointment, and upon receiving the same such person shall, *before entering upon the duties of his office,* take and subscribe the oath of office required by the *Constitution* of the State, before any officer authorized to administer oaths, which oath shall be indorsed upon the certificate of appointment and filed with the secretary."

This, then, presents a case where the appellant seeks to justify the arrest on the ground that it was made by a special policeman of the city of Dallas. It assumes the burden of showing that he was a special policeman. The ordinance requires that special policeman *"shall before entering upon the duties of his office take and subscribe the oath,"* etc.

If W. L. Harper were a party defendant to the suit he could not justify the arrest on the ground that he was a special policeman without proof that he had taken the oath of office. 1 Dill. on Mun. Corp., 4 ed., sec. 215; Olney v. Pearce, 1 R. I., 292.

Nor under the facts of this case could the railroad company justify the arrest without showing that Harper had taken the oath of office. Railway v. Smith (Colorado Sup.), 27 Pac. Rep., 329.

The undisputed evidence was, that at the time of making the arrest W. L. Harper was in the employ of the railroad company as its depot master at Dallas, and paid by said railroad company, and that the arrest was made by him upon its platform while so employed, and the court did not err in so charging the jury.

The questions for the jury were, was Harper in making the arrest acting within the scope of the authority conferred upon him by the railroad company, or was he acting in some other capacity? These issues were fairly submitted to the jury in the court's charge, and they could

not have been influenced by the charge stating the undisputed evidence. We overrule appellant's third and fourth assignments of error.

Appellant's seventh assignment of error raises the contention that the evidence does not support the verdict, and that the uncontroverted evidence shows that Harper was acting as a special policeman of the city of Dallas, and that the railroad company did not exercise any control, management, or direction over him, and is in nowise responsible for his acts. This raises the question, whether there is any evidence in the record showing that in making the arrest W. L. Harper was acting within the scope of his employment by the railroad company.

Harper testified that he was in the employ of the appellant railroad company at Denison, Texas, where he resides, as passenger brakeman, and while so employed on the 10th day of October, 1896, he was ordered by the train master of appellant at Denison to go to Dallas and act as depot master for the company there. A request was made by the ticket agent of the railroad company to have Harper appointed a special policeman, and thereupon the appointment was made.

He was depot master for the appellant at its depot at Dallas. He says his duties were to look after the property of the company and the traveling public in and around the company's depot at Dallas.

He was paid by the railroad company. Again he says: "I was instructed as such policeman to look after the property of the railroad company and the traveling public, by the railroad company." He testified to making the arrest of Warner and making the affidavit against him.

A commission as special policeman was issued to Harper. He says he made no report of the arrest to any person. The chief of police of Dallas testified that no report was made to him, and that he did not know Harper.

Harper testified he had no instructions from anybody in reference to selling railroad tickets on and about the platform.

Mr. Wood, in speaking of the liability of the master for the negligence of the servant, lays down the rules as follows: "The simple test is, whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business; but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By authorized is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders." Wood on Mast. and Serv., sec. 307.

It has been held that where an engineer upon a locomotive engine wantonly and maliciously sounds the whistle so as to frighten the horses of a traveler upon the highway, causing them to run away and injure the owner, the railroad is liable. Railway v. Dickson, 63 Ill., 151; 16 Am. Rep., 114. So where the engineer wantonly and willfully runs down any plaintiff's cattle, the engineer's principal is liable. Railway v. Middles-

worth, 46 Ill., 494; Railway v. Barton, 61 Ind., 293. So also while waiting at defendant's depot at Jackson, Miss., plaintiff went in a water closet set apart for ladies only, and was thereupon seized by the depot agent, dragged across the room, and delivered to a policeman, who at the agent's request took him to jail, where he remained until next day, when he was released without any charge being made against him, the railroad company was held liable. Railway v. King, 69 Miss., 852; same case 13 So. Rep., 824; King v. Railway, 10 So. Rep., 92. See also Gillingham v. Railway, 14 S. E. Rep., 243; Kreulvitz v. Railway, 28 Am. and Eng. Railway Cases, 138; Eichengreen v. Railway, 34 S. W. Rep., 219; Railway v. Conway, 5 Pac. Rep., 142.

Harper was primarily employed by the railroad company. He was ordered from Denison to Dallas to assume the duties of depot master at that place. No specific instructions seem to have been given him. He was told to look after the appellant's property and the traveling public. His duties were general.

The appellant requested that he be appointed a special policeman. It must have been contemplated that it might become necessary for him to make arrests. We think the jury may have fairly inferred that in making the arrest of appellee Warner, Harper was acting within the scope of his duties as depot master for appellant.

We overrule appellant's seventh assignment of error.

Appellant's eighth assignment of error complains that the verdict is excessive. We have carefully examined the evidence and do not think this assignment is well taken.

We overrule appellant's fifth and sixth assignments of error.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*