## RUCKER v. BARKER.

(Court of Civil Appeals of Texas. Austin. Oct. 23, 1912. Rehearing Denied Dec. 4, 1912.)

1. FALSE IMPRISONMENT (§ 15*)—ARREST BY OFFICER — EMPLOYMENT BY PRIVATE INDIVIDUAL.

Where plaintiff was illegally arrested by a peace officer, who was also employed to preserve the peace by defendant, who was running a tent show, the fact that the person making the arrest was an officer was not sufficient in itself to show that he made the arrest in his official capacity, nor was the fact that the officer was in defendant's employ sufficient in itself to show that he made the arrest as defendant's servant.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–67; Dec. Dig. § 15.*]

2. FALSE IMPRISONMENT (§ 15*)—PUBLIC OFFICER DOING PRIVATE DUTY—LIABILITY OF EMPLOYER.

Defendant, while operating a show and selling medicine in a city, employed a peace officer to keep the peace in and about the show tent. A dispute arising as to a seat plaintiff was occupying, the officer was requested by defendant's wife to "settle it in a nice way." The officer asked plaintiff to vacate the seat, and, on his refusing, had a conversation with defendant, who instructed him to go and settle the dispute, whereupon the officer pulled plaintiff out of the seat, arrested, and incarcerated him for disorderly conduct. *Held*, that the officer's act in so doing was not in his official capacity, but in the prosecution of defendant's business, and that defendant was therefore liable for the consequences.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–67; Dec. Dig. § 15.*]

3. TRIAL (§ 252*) — REQUEST TO CHARGE — ABSTRACT INSTRUCTIONS.

Where an officer, while doing private duty at defendant's show, arrested and incarcerated plaintiff as the result of a dispute over a seat, acting entirely in defendant's service, and not as a peace officer, the court, in an action for false imprisonment, properly refused, as abstract, an instruction that it was the duty of every peace officer to preserve the peace within his jurisdiction, and that, to effect such purpose, he could use all lawful means.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

4. FALSE IMPRISONMENT (§ 36*)—COMPENSATION—EXCESSIVENESS.

Plaintiff, a young unmarried man of good habits, paid for a reserved seat ticket at defendant's tent show, and, on refusing to surrender it to another patron, was dragged out of the tent by a peace officer, arrested for disorderly conduct, struck over the eye with a pistol or other hard substance, causing a wound, which did not heal for two weeks afterwards, was thrown down by the officer, his clothes torn, taken to the police station in the hoodlum wagon, and locked up with negroes and Mexicans for about two hours. His arrest occurred in the presence of a crowd, a number of whom were friends and acquaintances, and also in the presence of a young lady to whom he was talking. *Held*, that a verdict allowing $1,000 compensatory damages was not excessive.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 113–115; Dec. Dig. § 36.*]

5. FALSE IMPRISONMENT (§ 36*)—DAMAGES—EXEMPLARY DAMAGES.

Where, in an action for false imprisonment in causing plaintiff's arrest for disorderly conduct at a tent show, there was evidence of actual malice on defendant's part, in that he thought he recognized plaintiff at the time of his arrest as a person who had previously stolen a seat, it was not error to allow $250 as punitive damages.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 113–115; Dec. Dig. § 36.*]

Appeal from District Court, McLennan County; Marshall Surratt, Judge.

Action by Jno. Dyer, by his next friend, A. M. Barker, against H. D. Rucker. Judgment for plaintiff, and defendant appeals. Affirmed.

O. L. Stribling, of Waco, for appellant. Hamilton & Kibler, of Waco, for appellee.

### Findings of Fact.

JENKINS, J. John Dyer, by his next friend, A. M. Barker, brought suit against appellant for damages on account of alleged false imprisonment. Appellant was running a tent show and selling medicine in the city of Waco. Appellee, a resident of Waco, 18 years of age, and an electrician, attended appellant's show, and purchased a reserved seat. The price of admission was 10 cents, and reserved seats were 20 cents. The holder of a reserved seat was entitled to sit in a chair in the central portion of the tent, but was not entitled to any particular seat. The appellee took a seat by Mrs. Graves, who told him that she had a friend who wished to occupy that seat, and asked him to move. He did so, moving into the adjoining vacant seat. About this time Mr. Graves appeared with Mrs. Cates, the friend referred to, who took the seat vacated by appellee. Graves stated to appellee that he was occupying his seat, and asked him to move. Appellee replied that the seat was his. Graves said that he had bought it and paid for it. Appellee replied that he had also bought it and paid for it. Appellee was unacquainted with either Graves or his wife. Some words passed between Mrs. Graves and appellee with reference to appellee's moving, and Mrs. Graves told him she had a notion to slap him in the mouth. Appellee replied that that was all right; that he was too much of a gentleman to do anything to a lady. Graves said to his wife, "Don't talk to the fool," and said he would have the seat. He went and informed appellant that appellee was in his seat, and would not give it up. Appellant's wife sent for J. J. Roberts, a deputy constable, who had been employed by appellant to keep the peace while the show was going on, and had been in such employment for about two months. Roberts went with Graves to appellee, and requested appellee to move and give Graves the seat. Appellee re-

fused to do so. Roberts then went to appellant, who was some 25 or 30 feet away, and had a talk with him, and summoned one C. M. Crawford to assist him, and they returned to appellee, and Roberts caught him by the collar and pulled him out of the seat. Roberts and Crawford dragged appellee to the door, he struggling and protesting, took him through the door, passing within two feet of appellant, and to the outside of the tent, where they threw him down and then took him to a barn, phoned for the hoodlum wagon, turned him over to the police with instructions to lock him up, and make complaint against him for disturbing the peace.

Appellant defended upon the ground that what Roberts did was done in his official capacity, and not by any order or direction of his, and that appellee was arrested by Roberts for disturbing the peace by swearing, cursing, and using loud language. The court submitted the case to the jury upon special issues; the first and second of which are as follows: "(1) Did the plaintiff immediately before he was arrested by J. J. Roberts on the occasion in question swear or curse or use loud language in the presence of, and in a manner calculated to disturb, the people, or any of them, who were assembled on that occasion? If you should answer the foregoing issue in the affirmative, then you need not answer any of the following special issues, but return your verdict without looking further. If you should answer the foregoing issue in the negative, then you will find from the evidence and answer the following issues:

"(2) Did Roberts arrest plaintiff at the request of or under the direction and instruction of the defendant, or was he when making said arrest acting within the scope of his duties under any employment of him by the defendant in making such arrest, or did he make such arrest of his own volition as a peace officer in what he conceived to be the discharge of his duties as a peace officer? If you should find in answer to the foregoing issue that Roberts arrested plaintiff of his own volition in the discharge of his duties as a peace officer, then you need not find any answers to the following issues; but if you should find that he made such arrest at the request of or under the direction or instruction of defendant, or while acting within the scope of his duties under any employment by the defendant, and that plaintiff did not curse or swear or use loud language as submitted in issue No. 1 above, then in that event you will answer the following issues."

The jury in reply to special issue No. 1 answered, "No." In reply to special issue No. 2, answered: "Yes; we find that Roberts made the arrest by instruction of defendant." The evidence, which will be further discussed in the opinion, is sufficient to sustain these findings of the jury.

Upon the issue of actual damages the jury found for appellee in the sum of $1,000, and upon the issue of punitory damages, found for him $250.

## Opinion.

1. Appellant requested the court to instruct the jury to peremptorily return a verdict in his favor, and assigns error upon the refusal of the court so to do, and also upon the refusal of the court to set aside the verdict on motion for a new trial for the reason that the same was not sustained by the evidence.

[1] The fact that Roberts was an officer is not sufficient in itself to show that he made the arrest in his official capacity; nor is the fact that he was in the employment of appellant sufficient in itself to show that he made such arrest as the servant of appellant. As an officer it was his duty to preserve the peace, and it is immaterial that he was paid for his services by appellant. The facts in reference to his employment are that appellant, when he first opened his show, phoned to the chief of police to send an officer to his show to preserve the peace. The chief of police replied that he would not require an officer to be at his show at night unless appellant would pay for such services, and thereupon appellant agreed to and did pay $10 a week, and Roberts was assigned to duty at appellant's tent.

[2] As such officer it was his right and his duty to arrest any one who committed a breach of the peace, but it was not his duty as such officer to determine who were entitled to seats, or to any particular seat. Such may have been his duty as the servant or employé of appellant. Both Roberts and appellant testified that appellant did not instruct him to arrest appellee. When Roberts first appeared at the summons of appellant's wife, appellant told him that there was a dispute over there as to a seat, and for him to go and settle it in a nice way. After Roberts had gone to appellee and appellee refused to vacate the seat, Roberts returned to appellant and they had a talk. The details of this conversation are not given, further than that appellant told Roberts to go and settle the dispute. Now, it was no part of Roberts' duty as an officer to settle this dispute, and the only authority which he had to do so was that which he derived from appellant. How did appellant expect him to settle the dispute? Appellee had positively refused to vacate the seat. There would seem to be but one way for Roberts to settle it, and that was the way in which he did settle it, namely, by taking appellee by the collar and dragging him out of the seat; and appellant must reasonably have anticipated that Roberts would forcibly remove appellee, if he decided that he was not entitled to the seat. Under such circumstances, it is not material that appellant did not instruct Roberts to forcibly remove appellee. Wood, in speaking of the liability of the master for the acts of the servant, lays down the rule as fol-

lows: "The simple test is whether they were acts within the scope of his employment, not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the acts were such as were incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders." Wood on Master and Servant, § 307. Here the act was done while prosecuting the master's business—that is to say, in settling the dispute as to who was entitled to the seat—and forcibly removing appellee from the seat was incident to the performance of the duty intrusted to him by appellant. "The master can never escape liability for the abuse of authority by the servant. Therefore the question always is whether there was any authority, express or implied, on the part of the servant to do the act." Id. § 309; Railway Co. v. Warner, 19 Tex. Civ. App. 463, 49 S. W. 254; Railway Co. v. Dean, 98 Tex. 517, 85 S. W. 1135–1137; Railway Co. v. Parsons, 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857; Eichengreen v. Railway Co., 96 Tenn. 229, 34 S. W. 221, .31 L. R. A. 702, 54 Am. St. Rep. 833.

[3] 2. The court did not err in refusing the following special instruction: "It is the duty of every peace officer to preserve the peace within his jurisdiction, and to effect this purpose he shall use all lawful means. He shall, in every case where he is authorized by the provisions of the Penal Code, interfere, without warrant, to prevent or suppress crime." This is a mere abstract proposition of the issue submitted to the jury in special instructions above set out. No point was made in the case that the arrest was without warrant. Nor did the court err in refusing to give other special instructions requested by appellant for like reasons. Moore v. Pierson, 93 S. W. 1009; Coal Co. v. Coal Co., 44 Tex. Civ. App. 369, 99 S. W. 411.

[4] 3. Appellant assigns error on the overruling of his motion for a new trial on the ground that the actual damages found by the jury were excessive. Appellee's testimony fully sustains the amount of actual damages found by the jury. It appears that he was a young man of good habits, had never been arrested before; that he was arrested in the presence of a crowd, a number of whom were friends and acquaintances, and in the presence of a young lady to whom he was talking at the time, and who the testimony strongly indicates was his sweetheart. He testified that he was dragged to the door, a distance of 30 or 40 feet; by Roberts and Crawford, whom Roberts had summoned to assist him; that he was struck over the eye with a pistol or some hard substance, making a contused wound on his forehead which could be seen for two weeks afterwards; that he was thrown down on the outside, and Roberts' knee placed on his chest and his clothes torn, and that he was put in the hoodlum wagon and carried to the police station, and locked up with negroes and Mexicans for about two hours; that, when he was first seized by Roberts, he asked the privilege of explaining the situation, and that Roberts said, "Explain nothing."

[5] 4. Appellant contends that the testimony is wholly insufficient to warrant a verdict and judgment for exemplary damages, It appears from the evidence that all that occurred in the tent occurred in the presence of appellant; that he made no objection and made no inquiry as to the merits of the case, from which facts the jury might be justified in inferring legal malice. Gold v. Campbell, 54 Tex. Civ. App. 269, 117 S. W. 468. There is one portion of appellant's testimony which tends to show actual malice. In reply to the question as to why he did not interfere in the treatment of appellee, he stated that Roberts was protecting his patrons. He was then asked if appellee was not one of his patrons. He said yes, but that there were good patrons and bad patrons, and that he considered appellee a bad patron, for the reason that on the night before a stranger had approached him and told him that there was a young man there who had bought a circus ticket (a ten cent ticket) and was occupying a reserved seat, and that he pointed out appellee as the party, and that he approached appellee and asked him if he had paid for his seat, and that he said that he had, and that, if appellant was not satisfied, he would pay for it again, from which he inferred that appellee was stealing a seat, and that he recognized appellee at the time of his arrest as the party referred to. While appellee denied this occurrence, yet it might fairly be inferred that appellant thought that he was the man who had stolen the seat, and that he had actual ill will against him. We do not think that the remarks of appellee's counsel in his closing speech require a reversal of this case.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.