GULF, C. & S. F. RY. CO. v. BESSER.
(No. 293.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 7, 1918. Rehearing Denied Jan. 30, 1918.)

1. FALSE IMPRISONMENT ☞15(3)—SCOPE OF AUTHORITY OF CONDUCTOR—ARREST OF BOYS THOUGHT TO BE STONERS OF TRAINS.

Where a railroad's conductor was informed by another conductor that his train had been stoned when passing a certain church, and to look out for like treatment, and the conductor, when his train came near the church, having consulted with a passenger formerly sheriff, saw several boys on either side of the track, and apprehended and took two of them on board the train, the act of the conductor was within the scope of his general authority as such, and in furtherance of the railroad's business.

2. CARRIERS ☞284(2)—CARRIAGE OF PASSEN-GERS—DUTY OF RAILROAD TO PROTECT PAS-SENGERS.

It was the duty of a railroad as a carrier of passengers to use the high degree of care that would be exercised by a very cautious and pru-dent person under the same circumstances to protect its passengers on a train from stoning by boys or others when it passed near a church.

3. FALSE IMPRISONMENT ☞15(1)—LIABILITY FOR TORT OF AGENT—ACTS OF THIRD PER-SON AT REQUEST AND UNDER ADVICE OF AGENT.

Where everything a passenger on a train did in relation to the arrest of two boys for being implicated in stoning trains was done at the request and under the advice of the train's con-ductor, the passenger's acts must be treated as those of the conductor in relation to the liabil-ity of the railroad for the arrest.

4. FALSE IMPRISONMENT ☞36 — FALSE AR-REST—EXCESSIVE VERDICT.

In an action against a railroad for the act of its conductor in arresting plaintiffs, two boys, for being implicated in stoning trains, and carrying them six miles up the road to a station, where they were released, without ad-dressing harsh or abusive language to them, so that they had to walk back home in the night-time, verdict of $1,000 damages to each boy was not so excessive as to show that the award was the result of bias, prejudice, or other improper motive or consideration on the part of the trial court sitting as a jury.

5. FALSE IMPRISONMENT ☞23 — ADMISSIONS —STATEMENTS IN ABANDONED ANSWER.

In an action against a railroad for false ar-rest of two boys by its conductor, certain state-ments or admissions contained in the original answer filed by the railroad were admissible, though the answer had been abandoned.

6. APPEAL AND ERROR ☞1051(1)—HARMLESS ERROR—EVIDENCE.

Any error on the part of the trial court in admitting such statements or admissions in the abandoned answer was harmless, where the facts were established on trial by witnesses without objection.

Appeal from District Court, Montgomery County; J. Llewellyn, Judge.

Consolidated actions by Hamilton Besser and another against the Gulf, Colorado & Santa Fé Railway Company. From a judg-ment for each plaintiff, defendant appeals. Judgment affirmed.

See, also, 181 S. W. 253.

F. J. & C. T. Duff, of Beaumont, for appel-lant. Dean, Humphrey & Powell, of Hunts-ville, for appellees.

HIGHTOWER, C. J. On the night of De-cember 19, 1912, Hamilton Besser and Jesse Johnson, two boys aged, respectively, 14 and 16 years, in company with other young people numbering between 50 and 75 had gathered at a country church house, known as the "Sweet Home" church in Montgomery county, to practice for a concert which was to take place a few nights thereafter, which church house was between 50 and 75 yards distant from the Gulf, Colorado & Santa Fé Railway Company's track, which track is crossed at that point by a community public road, and said boys were on that night, about 10 o'clock,

caused by appellant's conductor in charge of one of its passenger trains to be arrested and carried upon said train from said church house to the station of Keenan about six miles distant from said church house, and said boys were released at the station of Keenan and made their way back on foot to the said church house, and from there to their respective homes on that night. Each of these boys, by next friend afterwards filed a suit against the Gulf, Colorado & Santa Fé Railway Company, appellant, claiming, in substance, that they were wrongfully and unlawfully arrested or caused to be wrongfully and unlawfully arrested and detained by defendant's said conductor, acting within the scope of his general authority as conductor on appellant's said train, and in consequence of such wrongful and unlawful arrest and detention, suffered damages, etc. By agreement the two cases were consolidated in the trial court, the facts in both cases being in all material respects the same, and upon trial before the court without a jury judgment was rendered in favor of each plaintiff in the sum of $1,000, from which judgment, after its motion for new trial was overruled, appellant, Gulf, Colorado & Santa Fé Railway Company, brought the case to this court by appeal.

There are five assignments of error made by appellant, the second, third, and fourth of which present practically the same question, and will be considered together, these three assignments following:

"The court erred in rendering any judgment in favor of plaintiffs herein, because said judgment necessarily involved the finding by the court that the conductor of defendant had authority to stop its train and to apprehend, or cause to be apprehended, the plaintiffs Hamilton Besser and Jesse Johnson in the manner and at the time disclosed by the testimony, whereas in truth and in fact the record wholly fails to show any evidence that defendant's conductor had any such authority, either actual or apparent, and wholly fails to disclose any liability on the part of the defendant company."

"The court erred in rendering any judgment in favor of plaintiff against this defendant, because such judgment is without any support in the testimony, in that the evidence introduced by the parties failed to show any liability on the part of defendant."

"The judgment of the court should be set aside because it is against the overwhelming weight and preponderance of the evidence, and is without support in the testimony in this: There is no testimony to show that the acts of defendant's conductor or of John McKinney were authorized, either expressly or by implication from the conditions and circumstances surrounding the occurrence complained of in plaintiffs' petition, or by the course of employment of said conductor, and there is no evidence to show that the acts of said conductor and John McKinney were in any way ratified by the defendant."

These assignments are submitted as propositions, and in addition thereto these further propositions are advanced:

"Appellant, having entered a general denial to all of the allegations of plaintiffs' petition upon which the trial was had, the burden of proof was on plaintiff to show that the arrest or apprehension of plaintiffs was within the scope of the employment of agent and servant of appellant, and the evidence having failed to show that McKinney, who made the alleged arrest or apprehension of plaintiff, was an employé of the company, or was acting under or by direction of any one who was authorized by the company to give such instructions or directions, and no ratification of his acts by the company having been shown, the court should, as a matter of law, have entered judgment for the defendant."

"In order to render the master liable for the acts of its servants and employés, the act must not only be one that pertains to the business of the master, but must be fairly within the scope of the authority conferred upon the servant by virtue of his employment, or by express authorization to do the particular act complained of."

As counter propositions to those of appellant, under the foregoing assignments, appellee presents the following:

"It was a part of the duty of defendant's conductor, who was in charge of the train upon which the appellees were arrested and upon which they were carried and transported, to protect said train and the passengers thereon against attacks, and it was in the discharge of such duty that defendant's conductor caused appellees to be arrested and transported; and, though the conductor was mistaken in believing that appellees were about to make an attack on said train, such mistake or belief would not relieve the defendant from liability for the acts of its conductor done, and procured to be done, in the discharge of the duties devolving upon him pursuant to his employment."

"The evidence shows that the conductor was in charge of the train, and that it was his duty to protect the train and passengers from attacks, and that the arrest of the appellees was effected by the conductor for what he conceived to be the protection of the train and its passengers. Therefore the acts of the conductor resulting in the arrest of the appellees were within the scope of his authority, and the defendant is liable therefor."

We do not understand from the briefs of counsel in this case that there is really any difference between them as to the rule of law that governs where the master is sought to be held responsible for the act of his servant in cases of this character, and that the rule is conceded to be that where the act complained of on the part of the servant comes within the general scope of his authority or employment and is done in furtherance of the master's business, then the master must respond to one injured by such act on the part of the servant, if wrongful, whether such particular act was expressly authorized by the master or not. Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Warner, 19 Tex. Civ. App. 463, 49 S. W. 254; Railway Co. v. Dean, 98 Tex. 517, 85 S. W. 1135, 70 L. R. A. 943; Wolf v. Perryman, 82 Tex. 112, 17 S. W. 772; Railway Co. v. Donahoe, 56 Tex. 162; Newburn v. Durham, 10 Tex. Civ. App. 655, 32 S. W. 112. There being no real question as to the true rule governing in cases of this character, the only question to be determined in disposing of these assignments is whether under the facts of this case the acts of appellant's conductor in causing appellees to be arrested and detained came within the general scope of his authority as such conductor, and whether

such acts were in furtherance of appellant's business as a common carrier of passengers by a railroad. We will briefly state these facts, in substance, as we gather them from the record, and will not undertake to quote the testimony of the witnesses in doing so.

On the night of December 19, 1912, when appellant's passenger train, the conductor of which caused the arrest of appellees, arrived in the town of Conroe in Montgomery county, going west, the conductor of said train was informed by the operatives of another of appellant's passenger trains known as the "Boll Weevil," going east, that said Boll Weevil train on that same night, and about 30 or 40 minutes before said trains met at Conroe, had been stoned and rocked, as said Boll Weevil train traveled east passing along by said Sweet Home church, and appellant's conductor, whose name was Pittman, in charge of said west-bound train was warned to look out for his train and passengers when his train should pass said Sweet Home church. Being in possession of this information and warning, appellant's conductor, Pittman, on the west-bound train, soon after the same was leaving the station of Conroe commenced preparations with a view to protecting his passengers, by closing the windows and pulling down the shades and curtains of his coaches, for the reason that he apprehended that when his train should pass said church house, the same would be stoned and rocked, as had been the case with the east-bound train just before, and, while taking these precautions, appellant's conductor was observed by a passenger on his train whose name was John McKinney, who asked the conductor why he was thus pulling down the shades, etc., in the coaches, and this passenger McKinney was thereupon informed by appellant's conductor that he expected the train to be rocked or stoned when the same should pass the church house in question, which was about six or eight miles west of Conroe, and in the same connection said conductor stated to the passenger McKinney that one of appellant's trains had been rocked at said point the night before, and that the east-bound train that night had also been rocked by persons near said church house. This passenger, John McKinney, was at one time sheriff of Grimes county, and appellant's conductor, on the night in question, thought that he was still such sheriff, or an officer of some character, and at the same time appellant's conductor asked McKinney if he would not assist him in apprehending the parties who were expected to rock or stone the train when the same should pass said church house, and thereby protect the passengers on said train. To this request, John McKinney agreed, and, not knowing from whom or by whom such attacks upon the train would be made, but suspecting or thinking perhaps that such attack might be made by drunken negroes or some other dangerous characters, he, McKinney, asked appellant's conductor if he had a pistol, whereupon appellant's conductor replied that he had not, but that he would get one from the express messenger on the train, and give it to McKinney for the purpose of enabling McKinney to apprehend the persons who were expected by the conductor to make the assault on his train. Such pistol was procured by the conductor from the express messenger, and was handed to the passenger McKinney, and as the train was nearly approaching the Sweet Home church house, appellant's conductor and McKinney saw what they thought to be some one flagging the train at the road crossing by the church house with what appeared to be a torchlight, and as the train approached nearer this crossing, in response to this signal, appellant's train was caused to slacken its speed, and when the same reached the crossing, approximately opposite said church house, and while on said crossing the train was brought to a stop and several boys were observed by appellant's conductor and John McKinney, standing in close proximity to appellant's track, some on the right of the track and some on the left, those on the left being within four or five feet of appellant's track. When appellant's train stopped, John McKinney immediately stepped from the platform on the left-hand side, and was face to face with Hamilton Besser and Jesse Johnson and another boy named Claude Miller, and he approached them with a pistol in his hand, which was observed by these boys, and with a remark, substantially to the effect, "What are you doing rocking this train?" and as the appellees testified, without giving them a chance to answer, the said McKinney grabbed Hamilton Besser and Jesse Johnson and marched them to the steps of the coach, where the conductor was standing, and asked the conductor what he should do with the boys, to which the conductor replied, "Bring them on here," meaning the train. Thereupon the appellees, Besser and Johnson, were carried upon appellant's train and into one of the coaches and seated, and shortly thereafter appellant's conductor, Pittman, came into the coach and sat down in front of the appellees, and began to question them about their rocking and stoning the train, etc., and in effect told them that they were there for the purpose of stoning the train, and that such acts on their part were very wrong, and very dangerous to passengers on the train, and admonished them against such conduct, but did not abuse or in any other manner excoriate these boys while on said train, and when the train reached the station of Keenan, which was about six miles distant from this church house, these boys were asked by the conductor if they desired to get off there, and they responded that they so desired,

and they were put off, and walked back down appellant's track to said church house that night and from there to their respective homes. Besser lived about a mile and a half from the church house, and Johnson about three miles. It appears from the record that the distance from where these boys lived to the station of Keenan was not much greater than the distance from their homes to the church house, but it also appears that they did not know how to get to their homes from the station of Keenan in the darkness of the night, except to go back down the track to the church house and from there home. The conductor testified that it was his duty, among other things, under his employment, to protect his train and the passengers thereon from violence and assaults, etc., and that his act in having these appellees arrested on the night in question was because he apprehended that they were at the road crossing near said church house on that night for the very purpose of rocking or stoning appellant's train, under his control and management, and that if they should do so, he feared that some of the passengers on appellant's train might be injured.

[1, 2] Now the question is with reference to the assignments under consideration, Was the act of the conductor, in causing the arrest and detention of appellees, as he did, done within the scope of his general authority as conductor of appellant's train and in furtherance of the appellant's business as a carrier of passengers by railroad?

We have given the question careful consideration, and have carefully analyzed all the authorities cited in briefs of counsel on both sides, and we have arrived at the conclusion that the act of appellant's conductor in causing appellees to be arrested and detained, as far as they were, was done within the scope of his general authority as conductor, and in furtherance of appellant's business as a carrier of passengers by railroad. The testimony is wholly undisputed to the effect that appellant's conductor reasonably apprehended that when his train should reach the point where these boys were arrested on the night in question, the same would be stoned or rocked, and it is perfectly apparent from the record that appellant's conductor reasonably apprehended that serious injury might thereby result to some of the passengers on appellant's train, and it was for the purpose of preventing this reasonably threatened injury that appellant's conductor caused John McKinney to do everything he did in connection with the arrest of these boys on that night; and it is made reasonably certain by the testimony in the record that appellant's conductor believed at the very time the train in question reached the road crossing, where these boys were standing on that night, that they were there for the very purpose of stoning or rocking said train, and

that if the train proceeded on without an effort to prevent such conduct, such train would be assaulted, and that probably some passenger or passengers thereon would be injured or violence done to the train itself, and for that reason appellant's conductor caused these boys to be apprehended or arrested and carried upon appellant's train, and there detained for a short period, as above stated. Unquestionably, it was the duty of appellant, as a carrier of passengers by railroad, to use that high degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances as prevailed that night to protect its passengers on said train, and the record showing without dispute that Conductor Pittman had complete control and management of said train, as such conductor, in the stead of appellant, and it appearing from his undisputed testimony that it was his duty, under his employment, to protect appellant's passengers and train, the conclusion cannot be escaped that what he did on that occasion was clearly within the scope of his general authority as such conductor, with the commendable purpose on his part of protecting the passengers of appellant on said train, and though he made a mistake, as far as any contention is concerned in this record, in having these boys arrested, nevertheless appellant is liable for such damages to them as proximately resulted in consequence of the conductor's act.

[3] There can be nothing, of course, in the contention that the passenger, McKinney, was not an employé of the appellant, because the record is undisputed to the effect that everything he did was done at the request and under the advice of appellant's conductor, and therefore McKinney's acts must be treated as those of the conductor.

We shall not enter into a discussion of the authorities in this connection, but content ourselves merely with citing them as they are found in the briefs of counsel for both sides; at least some of them above cited are cited by both sides. With these views, it follows that this court is of the opinion that the second, third, and fourth assignments ef error should be overruled; and it is so ordered.

[4] The next assignment we shall discuss is the fifth found in appellant's brief, which is as follows:

"The judgment of the trial court is erroneous, in that it is so grossly excessive and unconscionable as to suggest that the court was influenced by passion or prejudice against the defendant, or biased in favor of plaintiffs."

As a further proposition under this assignment, the following is advanced:

"When the proof of damages merely shows that a boy 15 or 16 years of age is apprehended and taken aboard a comfortable train and carried about six miles, and that no harsh or abusive language of any kind was addressed to him and no force of any character applied to him and that he was then released and permitted to go his way, and the evidence merely shows that he was 'scared' and 'shamed,' and fails to show

humiliation, and fails to show that his experience resulted in any kind of bodily injury; or sickness, or that he suffered from weariness, a judgment for $1,000 is so grossly excessive as to call for revision by this court."

Appellees' counter proposition to this is as follows:

"The question of what sum would fairly compensate a lad of 15 or 16 years of age for his unlawful arrest and detention and for having to walk for several miles to his home, and a portion of the way alone, after he was liberated by the defendants' agents at the station of Keenan penniless, was a question for the trial court, discharging the functions of a jury, and in assessing this damage at $1,000, the court acted within its discretion, and the amount fixed by the court as fair compensation was not such as to show that it was influenced by any improper motive or consideration."

With reference to the excessiveness of the verdict, as claimed by appellant, we admit that the amount awarded by the trial judge, sitting as a jury, would seem to be greater than the facts in this record would compel or ordinarily authorize, but we do not understand that it is within the province of this court to disturb a verdict awarded by a trial court or jury on the ground of excessiveness, unless this court can say from the entire record that it is manifest that such award was the result of bias or prejudice or some other improper motive or consideration, and that the action of the court in that regard was clearly wrong. We understand this to be substantially the rule in these cases, and while we understand that the Courts of Civil Appeals of this state have, on numbers of occasions, set aside or caused a remittitur on verdicts of this kind, they have only done so where they were able to say from the record that such verdicts were clearly wrong. We cannot so hold in this case. This is the second appeal in this case, the case having been reversed on the former appeal because of error in the charge of the court, and the jury on that trial awarded appellees $1,000 each, and on this trial the trial judge, who, presumably, was free from such prejudice or bias or other wrong motive, as is frequently discoverable in juries in cases of this kind, awarded to appellees the same amount, and we cannot consistently hold that it is manifest to this court that the trial judge did other than what he believed to be his sworn duty, and awarded to these plaintiffs such a sum as he, from all the evidence, thought would fairly compensate them for the wrong done and injury sustained. It will be remembered that this is not a case where a passenger is merely carried beyond his station, which would be a simple breach of contract of carriage, or where one should be merely wrongfully ejected, under circumstances attended by no violence or insults, and no serious inconvenience arises in consequence thereof, but here the appellees were wrongfully, and without any authority whatever, in so far as this record shows, arrested, and against their will, for a short period of time, it is true, detained;

and, while the conductor, after the boys were taken on appellant's train, was not guilty of any abusive language, or what would ordinarily be considered insulting conduct, towards these boys, and while it is made to appear that there was no physical suffering to amount to anything in consequence of this arrest and detention, yet these boys were arrested by the conductor (we treat the act of McKinney as that of the conductor), who was armed with a pistol in his hands at the time, and which was observed by these boys, though the pistol was not drawn or presented on them, and they were marched into appellant's train under these circumstances, and their further participation in the pleasures of their concert on that night was prevented, and presumably all this was done with the knowledge of their companions and associates, who had gathered at the church on that night, and these circumstances, we think, were calculated to cause much more humiliation and shame than appellant's counsel thinks should be attributable to the wrong of appellant's conductor on that night. It was the positive testimony of these appellees that they were ashamed and in effect humiliated by this conduct on the part of appellant's conductor, and that they were frightened and somewhat alarmed in getting to their homes on that night after being released at the station of Keenan; that the night was dark and cold, and they had to go through creek bottoms before reaching their homes after the late hour of midnight, not even being in the company of each other after returning to the church on that night, but going separately to their respective homes, which were distant from the church, as hereinbefore stated. Under these facts and circumstances, we do not feel that we would be justified in disturbing the trial court's judgment on this point and substituting what we might consider a fair and reasonable compensation to the appellees for their injury. This assignment is therefore overruled.

[5, 6] We have not discussed appellant's first assignment of error, which challenges the correctness of the action of the trial court in overruling appellant's objection to the admission in evidence of certain statements or admissions contained in the original answer filed by appellant in this cause. These statements or admissions were simply to the effect, in substance, that appellant's conductor caused these appellees to be arrested on the night in question because he apprehended that they were at the point in question for the purpose of stoning or rocking appellant's train, and that, in the event they should be permitted to do so, injury might result to passengers on the train, and that said John McKinney, in doing what he did on the occasion in question, was acting at the request of and for the purpose of assisting appellant's conductor in protecting its train and passengers on that night. This testimony

was objected to on the ground, principally, that an abandoned pleading is not admissible as evidence for any purpose in a case, and this is the only objection that was urged to such evidence, in so far as the bill of exceptions, raising this point, discloses. We have considered the question to some extent, and in so far as the specific objection urged here is concerned, we overrule the assignment, but if we should be mistaken in this view, still we are of opinion that the error on the part of the trial court in admitting this testimony was clearly harmless, because the record fully discloses that in substance these very facts were established by other witnesses on the trial without objection. Indeed, the evidence of the conductor himself, and that of John McKinney himself, is practically the same in effect as that offered by this pleading, and for that reason also the assignment is overruled.

It follows from the views above expressed that this court is of the opinion that there is no reversible error shown by the record, and the judgment of the trial court in this cause is therefore affirmed.